OPINION of the Court, by
Ch. J. Boyie.
This waS a sujt in chancery, brought to obtain a conveyance of a tract of land. The original bill alleges in substance that Nicholas M’Intire executed an obligation to convey gQQ acres to his son James M’Intire: that the latter sold a Par^ of the tract to the complainant and his brother William Hughes, and executed a conveyance therefor; but that previous thereto, Nicholas, the father, bad died without having conveyed to his son James, and left suo-dry other children coheirs with James ; and that conse-quently the conveyance by the latter did not transfer a complete title. It was furthermore alleged that William Hughes, the brother of the complainant, had sold to him his interest; and a decree was prayed for against the heirs of Nicholas M’Intire, all of whom were made defendants.
An amended bill was afterwards filed, in which it was alleged that tlie complainant had discovered that Nicholas M’Intire had by his last will devised the whole of the estate in said tract to his two sons Isaac and Jacob, and a decree prayed for against them only.
The suit was then discontinued as to the other heirs, and the bill being taken for confessed as to Isaac and Jacob, a decree was pronounced against them ; to reverse which they have prosecuted this- writ of error.
It is contended for the plaintiffs in error that the decree is erroneous- — 1st, Because James M’Inline and William Hughes, under whom the complainant claims, were not parties; and 2diy, Because there is no consi *187 deration alleged upon which the obligation given by N. M’Intire to his son James was founded.
1. There can be no doubt that James M’Intire and William Hughes were necessary parties. According to the statement in the bill, each of them once had an interest in the subject matter of the suit; and to entitle himself to a decree in his favor, it was necessary for the complainant to have shown that they had respectively transferred their interest to him : but whether they had made ouch transfer or not, is a question which could not be decided so as to be obligatory upon them, unless they were parties to the decision. Had the deed of conveyance from James M’Intire to the complainant and his brother William Hughes been proven or acknowledged and recorded as the law directs, be would have been thereby concluded from asserting a claim in opposition to his deed, and the necessity of making him a party would not have been so apparent. But the deed exhibited does not appear to have been recorded, nor is it alleged to have been recorded; and he could not therefore be estopped to deny it. And as to William Hughes there is no conveyance alleged to have been made by him, whereby there could he any pretence for concluding him from asserting his claim. It is plain, therefore, that for tire purpose of preventing future litigatioy, by. deciding upon and settling the rights of all the parties interested, which is tire constant aim of a court of equity, it was necessary that J ames M’Intire and William Hughes should have been parties.
2. The second ground taken for the reversal of the decree is clearly untenable. It is true that a court of equity will not enforce tire specific execution of a contract which is merely voluntary ; but the obligation given by Nicholas M’lntire to his son James, Is evidently not of that description. The relation between them of father and son, is not only alleged in the bill but is apparent upon the face of the obligation; and that relation, though not a valuable, is deemed in law a good consideration.
Under the statute of uses, the proximity of blood between the father and son, is sufficient to support a covenant by the former to stand seized to the use of the latter; and if so, it must have been, prior to the statute, a sufficient consideration to have created the use: for the statute can only operate to transfer the possession to the *188 use where there is an use created. Now an use prior ta the statute was similar to what is denominated a trust since. It gave to the cestui que use no right to the thing, but it gave him a right in equity to demand the thing. And prior to the statute it was the common practice to resort to a court of chancery to enforce the execution of an use, as it still is to enforce the execution of a trust. The inference is therefore clear, that proximity of blood lias always been a suflicient consideration to warrant the interposition of a court of equity, where there was no other circumstance in the case which forbid such interposition. But this doctrine does not depend for its support upon reasoning from analogy only : for the cases are numerous in which it has been directly decided. — -Newland on Contracts, 69-70, and the authorities there cited.
Whether, if the contract was not by deed, a court of equity would, where there was no other consideration than that of blood, decree its specific execution, is not material to be decided: nor is the court to be understood as having given any opinion upon that point: for in this case the contract is under the seal of the party; and combined with the efficacy of a deed, there is no doubt of the sufficiency of the consideration of blood to justify the interposition of a court of equity.
The decree is, however, erroneous for want of proper parties. It must therefore be reversed with costs, and the suit remanded for new proceedings to be bad.