## Mahan, &c. *vs* Mahan.

ERROR TO THE BALLARD CIRCUIT.

*Parties. Consideration. Gifts. Specific performance.*

JUDGE BRECK delivered the opinion of the Court.

*September* 27.

Case stated and the bill.

PETER MAHAN executed and delivered to his son James C. Mahan, the following writing or writings:

"*State of Kentucky, Hickman county, Jan.* 13, 1841.

"*To all whom it may concern*, Be it therefore known, that I have this day given unto my son James C. Mahan, two hundred acres of land, lying in township five, range

two west, to be surveyed out of the southwest of deeded land, and I hereby obligate myself neither to will, deed, nor mortgage said land during my natural life, but consider it his right and property.

Peter Mahan.

TEST,—John H. Mahan,
Suton O. Daniel,
John H. Claunch."

"Be it therefore known, that after the decease of myself and wife, Elizabeth Mahan, I give unto the said Jas. C. Mahan, my two black boys, known by the names of Sol and Isaac, but it is expressly understood we retain both the use and right of said negroes during our natural lives. Peter Mahan.

ATTEST,—John H. Mahan,
Suton O. Daniel,
John H. Claunch."

"Be it further known, that at our decease, myself and wife, Elizabeth H. Mahan, that the said James C. Mahan, is to be considered the sole heir of the residue of all the landed estate I may die in possession of, excluding my other heirs from any claim to the above donations. Given under my had and seal the day above written.

Peter Mahan, (Seal.)

ATTEST,—John H. Mahan,
Suton O. Daniel,
John H. Claunch."

This writing, or these writings, appear to have been all executed at the same time, and on the same paper.

At the same time Peter Mahan and his son James, by a written agreement, formed a partnership in the farming business, by which the former stipulated to give up to the latter the farm on which he lived, the two slaves named in the foregoing writing, and other property, to be under his control and management. Under this agreement, James subsequently carried on the farm and controlled the slaves up to the death of his father, in February, 1842.

This bill was filed by James C. Mahan, alledging that his father had died intestate, leaving three children be-

sides himself, all of whom, together with the widow, were made defendants.

He sets up the writings aforesaid, and claims under them the two slaves, the two hundred acres of land, and also an additional tract of about two hundred acres, left by his father, of all which he alledges he is in possession by the consent of his mother, who is willing that the land should be conveyed to him with or without reservation of her life estate. He alledges that no deed of conveyance had been made to him by his father, or since his death, by his heirs; that his brother, John H. Mahan, who had administered upon the estate of his father, and who was also made defendant, claimed said slaves, and was threatening to take them and hire them out; that he and the other heirs also contested his right to the land; that the personal estate left by his father was more than sufficient for the payment of all the debts. He prays that the heirs may be decreed to convey the land to him, and that he may be quieted in the possession and enjoyment of the slaves.

A part of the defendants answered, and resisted the relief sought, upon the ground that the writings relied upon were invalid, and were besides procured by the exercise of undue influence by the complainant over his aged father. The administrator admits the sufficiency of personalty for the payment of the debts.

The defence set up and answers.

The Court below decreed a conveyance from the heirs, of the two hundred acres of land named in the obligation of the deceased, and also of all the other landed estate owned by him at the time of his death; and that the title of the complainant to the two slaves be quieted, and the defendants prohibited from asserting claim or right thereto.

Decree of the Circuit Court.

To reverse that decree, the defendants have brought the case to this Court.

It is contended for the plaintiffs in error, that the decree is erroneous: 1st. Because John Claunch, the husband of one of the daughters of Peter Mahan, was not a party. It is recited in the decree that he had been duly served with process, and the bill was accordingly taken for confessed against him. But the fact does not otherwise appear in the record, nor does it appear that he was

The husband of the heir is a necessary party to a bill for the conveyance of land vested in the wife as heir to her father.

MAHAN, &c.
*vs*
MAHAN.

made a party by the complainant, in either his original or amended bills. He had an interest in the controversy, and was a necessary party, and should have been brought before the Court.

But 2dly. It is contended that the decree is erroneous upon the merits, and upon that question it will be proper to decide, so far as it depends upon the construction and effect of the written evidence of claim relied on by the complainant.

The relation of father and son is a good consideration to uphold a promise in writing by the former to convey land to the latter and authorize the Chancellor to decree a specific execution.

The complainant sets up and relies upon the writings exhibited, as three separate and distinct instruments. Whether they should be so considered, or virtually as constituting but one instrument, need not here be decided. For in either case, we think the complainant would be entitled, and only entitled to relief as to the two hundred acres of land embraced by the first writing, or that set up in the original bill. That obligation evidences a present gift of the land, and contains a covenant to have it surveyed, and an implied covenant thereupon to convey the title. The donor expressly stipulates that he will neither will, deed nor mortgage the land, but will consider it the right and property of his son. The relation between the parties is not only alledged in the bill, but appears upon the face of the obligation, to be that of father and son. That relation, though not a valuable, is deemed in law a good consideration; and, according to the case of *McIntire* vs *Hughes*, (4 *Bibb*, 186, and authorities there cited,) sufficient to authorize a specific execution of the contract in a Court of equity. It is true, in that case the contract was under seal, but the presumption is, it was executed prior to our statute, placing sealed and unsealed instruments of an executory character, upon the same footing.

As the record now stands, therefore, we are of opinion the complainant was entitled to the relief decreed as to the 200 acres of land described in the first obligation, but no further.

A gift of slaves though in writing, passes no title to the donee unless the wri-

The obligation in regard to the slaves was not to take effect until after the death of both the donor and his wife. The donee did not obtain possession at the time under the obligation, and according to its terms, was not then

entitled to it. As the possession, therefore, did not accompany the gift, and as the writing evidencing it, was not recorded, the gift, as such, was void under the act of 1798, (2 *Stat. Law*, 1480,) as settled by this Court in *Pyle* vs *Maulding*, (7 *J. J. Marshall*, 202,) *and Howard* vs *Samples*, (5 *Dana*, 306.)

ting be recorded, or the possession accompany the gift. (2 *Stat. Law*, 1480; 7 *J. J. Mar.*, 202.)

Whether this and the last obligation or writing relied on can or not be regarded as a testamentary disposition by the deceased, it is not necessary to decide. We only decide that neither of them entitle the complainant to any relief in this case, as the record now stands.

Wherefore, the decree is reversed and the cause remanded, that the complainant may be permitted to amend his pleadings and bring the necessary parties before the Court, and upon his failure so to do within a reasonable time, that his bill and amended bills be dismissed without prejudice.

*Cates & Lindsey* for plaintiffs; *Husbands and Hewitt* for defendant.