CASE 41————————FEBRUARY 19.

# Ford vs. Ellingwood, &c.

APPEAL FROM SHELBY CIRCUIT COURT.

Any real or personal property or money *given* or devised by a parent or grand-parent to a descendant, shall be charged to the descendant, or those claiming through him in the division of the estate, as an advancement. (1 *Rev. Statutes*, 426.)

The relation of father and son, though not a valuable, is deemed in law a good consideration, and will uphold a promise. It has never been held that such relation between the parties should be expressed in terms, in the written memorial of the gift, to render it operative as between the parties.

A parol gift of land, though not enforceable, is not illegal or void. The donor is, in morality and good conscience, under the same duty of respecting it, and perfecting it if necessary, as if it were in writing. And, although this duty will not be en-

forced by the positive action of the chancellor, the duty itself, and the equities growing out of it, are recognized as existing and as binding in conscience, and may therefore be sufficient to rebut a demand of the donor inconsistent with them, and which itself rests only upon the ground of its being equitably and conscientiously due. *Argu.*

A father executed the following instrument to his son, viz: "James—I expect to marry soon, and if you will settle yourself on the Grayer farm, you may have it. Thos. Ford." The son took possession of the land in 1842 or 1843, a short time before the second marriage of the father, who was then worth $35,000, exclusive of this land, and had but six children; the tract contained 433 acres, worth at the time seven or eight dollars per acre; the son has occupied it ever since, and has greatly enhanced its value by clearing, fencing, and other improvements, and it has long been well known as the "Grayer farm." James (his father having died in 1857,) was sued for a partition of the land amongst the heirs at law, and for an allotment of dower to the widow of his father. *Held*—that the transaction between father and son must be deemed a valid gift of the land to the latter, to be charged to him as an advancement at its value at the time he took possession of it.

T. N. & D. W. LINDSEY, for appellant, cited *Litt. Sel. Cases,* 22; *Ib.,* 77; 4 *Dana,* 552, 557.

BROWN & WHITAKER, and J. M. & W. C. BULLOCK, on same side, cited *Litt. Sel. Cases,* 22, 77; 7 *B. Mon.,* 579, 580, 582; 3 *Litt.,* 262; 4 *Dana,* 552; 6 *J. J. Mar.,* 605; *Pr. Dec.,* 177; *Story's Eq.,* 79, 36; 9 *B. Mon.,* 369; 14 *B. Mon.,* 110; 1 *Met.,* 553; 4 *Mon.,* 445; 1 *Dana,* 102; *Litt. Sel. Cases,* 30, 212; 4 *Bibb,* 187; 4 *Litt.,* 208; 1 *Met.,* 71; 4 *J. J. Mar.,* 219; 5 *B. Mon.,* 449; 6 *Ib.,* 619; 8 *Ib.,* 425; 9 *Ib.,* 168, 384; 4 *Dana,* 601; *Story's Eq., "specific performance."*

J. HARLAN, for appellees.

T. B. & J. B. COCHRAN, and M. C. TAYLOR, on same side, cited 2 *J. J. Mar.,* 222; 2 *Story's Eq., sections* 763, 793 *a*; 7 *B. Mon.,* 579; 6 *Ib.,* 101; 12 *Ib.,* 604.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

Thomas Ford died in the year 1857, in Shelby county, intestate, having been twice married, leaving several children and a widow, who afterwards intermarried with Ellingwood.

The widow, together with the children of the decedent by his last wife, filed their petition in the Shelby county court, making James H. Ford, who is a son of the decedent by his first wife, a defendant, alleging that the decedent was, at the time of his death, the owner of two tracts of land lying in Shelby county, and also of two tracts lying in Spencer county,

all of which are particularly described in the exhibits filed with the petition. They pray for a partition of these lands amongst the heirs at law, and for an allotment of dower to the widow.

James H. Ford filed an answer, claiming that one of the two tracts lying in Spencer county—the tract which had been purchased by his father from Samuel Grayer (or Greer,) and known as the Grayer farm—was the property of the defendant, under an agreement between his father and himself, evidenced by the following writing:

"James: I expect to marry soon, and if you will settle yourself on the Grayer farm you may have it.

THOS. FORD."

He says that by virtue of this agreement, and in acceptance thereof, he took possession of the Grayer farm, which was then in a comparatively wild and unimproved condition, and has remained in possession of it ever since, claiming it as his own—a period of fourteen or fifteen years—during which period he has greatly improved, and added to the value of the land. He therefore resisted the right of the plaintiffs to any partition, or allotment of dower out of this tract.

On his motion the cause was transferred to the circuit court, and Ellingwood, the husband of the widow, filed an affidavit, denying that Thomas Ford executed and delivered the paper exhibited and relied on by the defendant.

The court below rendered a judgment directing a partition and allotment of the land in contest, as constituting a part of the estate of Thomas Ford, deceased, and from that judgment, J. H. Ford has appealed.

1. The first question to be determined is whether the writing under which the appellant claims was executed by the decedent.

The record presents but little difficulty in the solution of this question. Five witnesses testify that in their judgment the paper in question is in the hand-writing of Thomas Ford, with whom, and with whose hand-writing, the witnesses had been well acquainted. No witness expresses a different opinion. The only testimony relied upon on the other side, consists of some statements said to have been made, both by Thomas

Ford and his son, inconsistent with the claim of the latter. But without adverting more specially to the testimony on either side we deem it sufficient to say, on this point, that the weight of the evidence, preponderates very decidedly in favor of the genuineness of the writing in question.

2. Next as to the legal effect of the execution and acceptance of this writing.

The evidence establishes the following facts: That the appellant took possession of the land in 1842 or 1843, a short time before the second marriage of his father, who was then worth $35,000, exclusive of this land, and had but six children ; that the tract contained 433 acres, and was worth at that time seven or eight dollars per acre ; that the appellant has occupied it ever since, and has greatly enhanced its value by clearing, fencing, and other improvements, and that the land has long been well known as the "Grayer farm."

By the Revised Statutes it is provided, that "any real or personal property or money, *given* or devised by a parent or grandparent, to a descendant, shall be charged to the descendant, or those claiming through him, in the division" of the estate, as an advancement. (1 *Rev. Statutes*, 426.)

The question then, is, whether the transaction between the father and son, with respect to the land in controversy, must not be deemed a valid gift, and therefore an advancement within the meaning of the statute. That such was the intention of the parties cannot be doubted in view of the facts disclosed by the record. And that intention is sufficiently expressed on the face of the instrument. It identifies the parties, and also the subject of the gift. It imports a promise on the part of the father that the son *shall have* the farm, upon the single condition that the latter will settle himself on it. This condition was performed, promptly, fully, and in good faith by the donee, thereby entitling himself to *have* the land as his own, for that is the plain meaning, as well as the legal effect, of the written promise of the donor. The relation between the parties is an undisputed fact in the record, being distinctly alleged by the appellees in their petition. And that relation, though not a valuable, is deemed in law a good consideration,

and will uphold the promise. (*McIntire vs. Hughes*, 4 *Bibb*, 186; *Mahan, &c. vs. Mahan*, 7 *B. Mon.*, 582.) And it has never been held that such relation between the parties should be expressed in terms, in the written memorial of the gift, to render it operative as between the parties. Even if the writing had contained a recital acknowledging the receipt by the donor of a full valuable consideration for the land, yet the donee might have been charged with its value as an advancement, upon proof *aliunde*, that the transaction was in fact a gift, although purporting to be a sale; that the consideration was not in fact valuable, although so recited in the deed, but that it was meritorious merely. (*Gordon's heirs vs. Gordon*, 1 *Met. Ky. Rep.*, 285, *and the authorities there cited.*)

But if it were conceded that the writing in question was imperfect in respect to some formality required by the statute of frauds, it would by no means follow that the donee might not have protected himself under it, against the claim of the donor or his legal representatives. For it has often been decided by this court that parol contracts in relation to lands are not void. "On the contrary, they are efficacious as a shield to protect those claiming under them in many cases." (*Gudgell vs. Duvall*, 4 *J. J. Mar.*, 230; *Roberts vs. Tennell*, 3 *Mon.*, 247; *Graddy vs. Berry, &c.*, 1 *Met. Ky. Rep.*, 553.) And, in the case of *Park's heirs vs. White's heirs*, (4 *Dana*, 552,) it is said that "a parol gift of land, though not enforceable, is not illegal or void. The donor is in morality and good conscience under the same duty of respecting it and perfecting it, if necessary, as if it were in writing. And although this duty will not be enforced by the positive action of the chancellor, the duty itself, and the equities growing out of it, are recognized by the court as existing, and as binding in conscience, and may therefore be sufficient to rebut a demand of the donor inconsistent with them, and which itself rests only upon the ground of its being equitably and conscientiously due."

If it were necessary to invoke the aid of this well settled doctrine in support of the equitable defense set up by the appellant, very little would have to be said to show its application to the case. He is not the actor, appealing to the chan-

cellor to execute specifically, against his co-heirs, a defective executory gift of land. If that were his attitude it would doubtless be the duty of the chancellor to scrutinize closely the foundation on which his equity might be based. But such is not his attitude. He is resisting, in a court of equity, a proceeding instituted by the appellees, the object and effect of which was to divest him of the possession of the land in contest, which land he had acquired, held, and improved under the written assurance that the land should be his. Manifestly this is not a case in which the chancellor would subject the equities on which he rests his defense to the rigid test of the statute of frauds.

Upon the whole case we are satisfied that the court below erred in directing a division and allotment of the tract of land in controversy, as a part of the estate of Thomas Ford, but that the appellant has shown himself entitled to it, and is chargeable with its value, to be estimated at the time he took possession in 1842 or 1843, under the gift from his father.

The judgment is therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.