WILLIAM H. EVANS *vs.* JULIA H. BULMAN ET AL., ADMINISTRATORS OF D. D. BULMAN.

*Pledge of Policy of Life Insurance—Possession of Policy by Pledgee after Payment of Debt.*

A policy of life insurance was pledged to A, with a written assignment to secure the payment of a certain debt. After this debt was paid the policy remained in the possession of a company to which A had transferred his business. Upon the death of the assured, the proceeds of the policy were claimed by A, who alleged that after the payment of the debt the assured made a verbal agreement that the policy should continue as security for a line of credit with him, or with him as trustee for said company. At the time of his death the assured was indebted to the company but not to A. The company was not a party to the proceedings. *Held*, that the evidence failed to prove that the policy had been repledged to A, after the payment of the debt for which it had been originally assigned.

Appeal from a decree of the Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Thos. Ireland Elliott*, for the appellant.

*J. J. Alexander* and *Carville D. Benson* (with whom was *H. E. Karr* on the brief), for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

On March 2nd, 1891, Durant D. Bulman assigned to the appellant, as security for a cash loan of $250, a policy of

insurance on his own life for $1,200, issued by the Mutual Life Insurance Company of New York. The assignment was in writing and was absolute in form, but a cotemporaneous receipt given by the appellant to Bulman stated that the assignment had been made as security for the loan.

At the time the loan was made Bulman was indebted upon open account for merchandise to the appellant, who was a dealer in marble, and the $250 loan was charged to the former upon the books of the latter as an item in this open account.

In January, 1893, the appellant sold and transferred the assets of his marble business, including the open account against Bulman to the Evans Marble Company, which had been incorporated for the purpose of continuing the business. He at the same time delivered to the Marble Company the books and papers of the business, among which were the Bulman life insurance policy and the assignment of it to the appellant.

The open account against Bulman was transferred to the books of the Marble Company, and he thereafter currently dealt with it until his total indebtedness to it amounted on March 24th, 1893, to $2,960.62. On that day he paid to the Marble Company $5,000, of which it applied $2,960.62 to the payment in full of his indebtedness to it, and closed the account against him on its books. It then opened a new account with him which started in his favor with a credit for $2,039.74, being the balance of the $5,000 paid by him. Although the loan of $250, to secure which the insurance policy had been assigned, was thus paid and extinguished, the policy and its assignment remained in the possession of the Marble Company, and the receipt showing the policy to have been assigned only as a security for the loan, remained in Bulman's possession until his death in 1899. Bulman continued to deal with the Marble Company until December 13, 1898, at which time he owed it $2,880.15. For this amount he gave the Marble Company his notes which are still unpaid.

After Bulman's death both the appellant and the appellees claimed the proceeds of the policy, and the appellant sued the Insurance Company for them. The Insurance Company filed a bill of interpleader against the two claimants and paid the money due on the policy into Court. The Marble Company made no claim upon the Insurance Company and was not made a party to the suit.

The parties to this appeal set up their respective claims to the proceeds of the policy by their answers to the bill of interpleader.

The appellant in his answer admitted that the assignment of the policy to him in March, 1891, had been made merely as a security for the $250 loan, and that when Bulman paid off that loan to the Marble Company in March, 1893, he was entitled to a return and re-assignment of the policy. But he asserted in his answer that Bulman instead of demanding a return of the policy verbally agreed that the written assignment of it, which had been made as security for the $250 loan, "should continue in force until a further indebtedness of his to this respondent (the appellant), incident to a line of credit begun immediately after the extinguishment of the former indebtedness in March, 1893, should be paid and satisfied." In other words the appellant claimed that after Bulman had redeemed the policy from its liability for the original loan, he, by the arrangement above set forth, made a new pledge of it to secure a future line of credit. As this supposed new pledge was a verbal one the appellant relies upon the possession of the policy which was acquired under the original assignment, for that delivery which is essential to give validity to a verbal pledge.

The appellees in their answer admit the assignment of the policy to the appellant in March, 1891, as security for the $250 loan, but insist that upon the payment of that loan all of his claim upon the policy or its proceeds was extinguished. They deny that Bulman made any subsequent equitable assignment or pledge of the policy, and they claim the fund in Court as the legal representatives of the assured.

A policy of life insurance is a mere *chose in action* for the payment of money. *N. Y. Life Ins. Co.* v. *Flack*, 3 Md. 354. Therefore, an equitable assignment or a pledge of it may be made by parol, and when such assignment or pledge has been executed by a delivery of the policy to the pledgee, equity will protect his lien. *Crane* v. *Gough*, 4 Md. 334; *Dickey* v. *Pocomoke City Bank*, 89 Md. 298 ; *Stout* v. *Yeager & Co.*, 13 F. R. 803; *Wells* v. *Archer*, 10 S. & R. 412; vol. 18 *Encyclopedia of Law*, p. 651.

While equity will recognize a mere verbal pledge of a *chose in action* such as an insurance policy, and will protect the lien of the pledgee, it requires the proof of the fact of the pledge and of its terms and conditions to be full and satisfactory. Especially is this true in a case like the present one, where the possession of the policy acquired under a written assignment to secure a specific debt, which has been paid, is relied upon as a delivery to support a verbal pledge of the policy as security for another and different debt.

When tested by this principle we are compelled to say that the evidence in the record before us fails to support the contention set up in the answer of the appellant. George W. Hugg, the Secretary and Treasurer of the Marble Company, who held the interview with Bulman, in March, 1893, at which it is claimed that the alleged verbal pledge of the policy was made to the appellant, was the leading witness for the appellant. He says, when testifying in relation to that interview : " While I am not able to give you the precise language used, it was in effect that the policy of insurance which we held at the time this settlement was made, should be continued with the Evans Marble Company as security for the credit which was to be extended to him. At the time of this oral assignment, March 24th, 1893, the account against Bulman in favor of W. H. Evans (the appellant) had been transferred by W. H. Evans to the Evans Marble Company." There is no evidence in the record that the appellant, after the Marble Company

took over his business in January, 1893, had any dealings with Bulman, or gave him any credit, or was his creditor at the time of his death.

The statement of assets and liabilities made by Bulman in 1898 in which his life insurance is mentioned was not made to the appellant but to the Marble Company. Moreover the statement does not mention or refer to any assignment or pledge of the policy to the Marble Company but simply describes it as "*with you*" indicating the location of it at the time. When we remember that the policy originally got into the possession of the Marble Company as security for a now extinguished debt, the reference to its location made in this statement of assets can hardly be considered as affording any support to the appellant's claim.

In the argument of the case the appellant's counsel contended that although the evidence failed to show a verbal pledge of the policy to the appellant to secure a debt due to him, yet he ought to be regarded as having held the title to the policy under the alleged verbal pledge, as trustee for the Marble Company, for the purpose of securing the new line of credit extended by it to Bulman. The difficulty with this contention is two-fold. In the first place no such claim is set up in the pleadings. The appellant does not in his answer claim to be a trustee for the Marble Company, but distinctly asserts that the policy was pledged to him to secure a further indebtedness *to him* and does not even suggest that he was acting as trustee for the Marble Company. In the second place, the record plainly shows that in March, 1893, when the alleged oral pledge of the policy was made, neither the title nor possession of it were in him.

The title was no longer in him because when his debt of $250, as security for which the policy was assigned to him, was paid off, the title to the policy reverted to Bulman. Payment of a mortgage debt extinguishes the title of the mortgagee to the mortgaged property whether it be real or personal. *Brown* v. *Stewart*, 56 Md. 430; *Bowditch* v. *Green*, 3 Met. 362–3; *Shriver* v. *Johnson*, 62 Ala. 37. The same

thing is true of the title of the grantee of a bill of sale of personalty which although absolute on its face was given only as security for the payment of a debt.    *Wallard* v. *Worthman*, 84 Ill. 447.

Nor was the policy in the possession of the appellant in March, 1893.   The record plainly shows that he delivered it to the Marble Company in January, 1893, when he transferred to that company his marble business along with the papers and assets thereof.   Hugg distinctly testifies that the Marble Company held the policy when Bulman made the settlement with it, by which it is admitted that he paid the loan as security for which the assignment of the policy had been made.

Under these circumstances the contention of the appellant, that in March, 1893, when the $250 loan was paid off, there was a pledge made to him of the policy, in trust for the benefit of the Marble Company, to secure a new line of credit to be given by that company to Bulman, must fall to the ground.

The testimony of Hugg gives some color to the theory that he believed that the policy was pledged by Bulman directly to the Marble Company in March, 1893, to secure a future line of credit, but that company is not a party to the present case and, as we have already determined that the appellant's claim to have acted as its trustee is not sustained, its rights are not before us for consideration.

The decree appealed from will be affirmed with costs.

*Decree affirmed.*

(Decided March 23rd, 1900.)