Eno, J.
This is an action of contract in which the plaintiff seeks to recover in Count 1 a balance of $14,000 together with interest due upon a promissory note made by the defendant and payable to the plaintiff, and, in Count 2, the sum of $14,000, together with interest due, “. . . the balance found to be due the plaintiff by the parties on an accounting together ’ ’. The Declaration contained a statement that “Both counts are for the same cause of action”.
The Defendant’s Answer was a general denial, and further that ‘ ‘ The plaintiff was a former employee of the defendant corporation; that he and other former employees of the said corporation, all of whom have since been removed, entered into a conspiracy to withdraw funds unlawfully from the corporation; that this conspiracy included the *140 issuance of promissory notes of the corporation, without consideration; that said conspiracy included the unlawful issuance of the note declared upon by the plaintiff; that said note is void; wherefore the defendant owes the plaintiff nothing”.
'The defendant filed a Declaration in Set-Off alleging “That on or about September 21, 194h, the plaintiff, as defendant in set-off, was then an employee of the plaintiff in set-off, and did, in collusion with other employees, unlawfully withdraw funds of the plaintiff in set-off in the amount of $5,000; wherefore the defendant in set-off owes the plaintiff in set-off the said sum of $5,000, together with interest for money received by the defendant in set-off to the use of the plaintiff in set-off”.
The plaintiff filed a general denial to the defendant’s Declaration in Set-Off.
The reported evidence is as follows:
“At the trial, there was evidence tending to show that the plaintiff had been employed by the defendant for some years prior to 1940- as Field Manager. His duties were to assist in contacting and schooling the sales representatives of the defendant and endeavor to increase the amount of business they were doing, and to secure business for the defendant.
•On February 6, 1940, one James F. Pitman, who was a stockholder, director, president, and sales manager in charge of all sales for the defendant, outlined in a communication to the plaintiff a new method of payment to the plaintiff for his services. The plaintiff was to be paid as a salary $45.00 a week, and traveling expenses $7'5.00 a week, and was to receive annually not in excess of $350.00 towards the purchase of a new car. He was to receive 2% of the net amount of the net sales of the defendant for the year 1940' in excess of $325.00. The communication ended: ‘We sincerely hope that this arrangement is satisfactory, and that it may be continued for the years to come. ’
*141 On February 9, 1940, the above arrangement, as a result of a conversation between the plaintiff and J ames F. Pitman, was voided by a communication providing for $10.00 a week increase in salary; 2% on all net sales for the year 1940 above $276,000; an additional $500.00 in the event that the sales for 1940 arrived at a net invoicing figure of $325,502.55. The plaintiff worked under this arrangement and duly received payment of the amounts designated.
On April 8,1941, by a communication to the plaintiff from Mr. James F. Pitman, the reimbursement that the plaintiff was to receive in the year 1941 as General Field Manager was established. Salary was to remain the same; bonus of 2% on the net invoicing above $275,000; commission of 5% on the list price of all Piteo Fryalators (machines manufactured by the defendant) sold to the War Department. Provision was made to exclude sales to Joe Lowe from the net sales in computing bonus.
On September 30,1941, a change was made to reduce the commission on War Department business to 5% of the net invoicing; otherwise the arrangement was not altered. The plaintiff worked under this arrangement and received payment of all amounts designated. The plaintiff continued to work for the defendant during the years 1942, 1943, 1944, and until he was discharged on April 27,1945. During this time, he secured substantial contracts for the defendant with the Navy Department for the manufacture of torpedo handle cradles and switch boxes. He also procured sub-contracts on Government work, and a contract for the manufacture and sale to the Government of dishwashers. He was also instrumental in the sale of fryalators, the peacetime production unit of the defendant, to the Army.
During all this time he was subject to the call of the defendant, and there was no evidence that he at any time refused or failed to do anything that the officers or persons of authority with the defendant requested him to do.
There was no new designation for the method of payment to the plaintiff for his services during the years 1942,1943, and 1944.
*142 During the years 1942, 1943, and 1944 the plaintiff was not paid for the services rendered by him except that he received the 5 % of the net invoicing of all f ryalators sold to the War Department. .
The net sales of the defendant-for the year 1942 were $588,915.91; for the year 1943, $1,007,318.08, and for the seven months of 1944, $887,554.68; The Joe Lowe sales for the year 1942 were $22,781.40; for the year 1943, $12,618.10, and for the seven months of 1944, $3,087.77.
The plaintiff was a stockholder, director, and president of a corporation known as the Associated Manufacturers, Inc., which had its home office in Washington, D. C. This corporation employed various salesmen who handled sales of various and sundry items to the general trade.
Because of the limitations imposed on -civilian production and -sales due to the War, the defendant determined that it was not economically sound for it to maintain its salesmen in the field. 'Consequently, in ¡September of 1942, it made an arrangement with the Associated Manufacturers, Inc. that its salesmen would cover the territory formerly covered by the defendant’s salesmen, and that, as compensation therefor, the Associated Manufacturers, Inc. would receive an override of 50% of the established dealers’ price list ;of the defendant: that the jobber’s discount to whom sales of the defendant’s fryalators were to be made would be deducted from the 50%, and a commission for the override between the jobber’s discount up to the 50% would be paid Associated Manufacturers, Inc.
The salesmen of Associated Manufacturers, Inc., in accordance with this arrangement, covered the territory designated, and made sales up to February 25, 1944, when the arrangement was terminated by the defendant. Associated Manufacturers1, Inc. received payment of all amounts due it.
At the time of the termination of the arrangement with Associated Manufacturers, Inc., James F. Pit-man, in notifying the plaintiff of the termination of the arrangement, said in a written communication sent in *143 Ms official capacity as President of the defendant that ‘As far as the sales of Piteo Pryalators- are concerned . . .we will revert back to our original plan. That of course maintains you as Field Manager.
‘We hope that you will accept the continuance of this position which has never been broken. This decision regarding Associated Manufacturers in no way affects your status. ’
In August of 1944, the plaintiff made claim against the defendant that he had not been paid except the commission on sales of Fryalators to the War Department -for the services rendered by him during the years 1942, 1943, and up to August of 1944. As- a result of this contention, a conference was held between the plaintiff and James F. Pitman, and the details- of the plaintiff’s claim were considered. The claim, as the plaintiff made it, totaled $41,616.40, based on 2% of the net sales of the defendant in excess of $27-5,000 for the periods involved. These sales were largely of Piteo Fryalators to jobbers- and the Government ; switch boxes to the Navy; leg extensions to the Navy; Government suh-contracts; dishwashers to the Army; parts and repairs to jobbers and users, and Army camp parts.
The details of the plaintiff’s claim as computed by James F. Pitman were in evidence as an exhibit.
A-t this conference, it was agreed between the plaintiff and James F. Pitman that the plaintiff would adjust his claim for $19,000.00, but, James F. Pitman would not take the responsibility for settling the claim on this basis on behalf of the defendant. As a result, the plaintiff appeared at a -conference of all the stockholders and directors of the defendant, with the exception of -one Eugene Pitman, who had at the time concluded an arrangement with the defendant to dispose of all Ms stock interest in the defendant to the defendant, and was waiting for the transaction to be consummated, and, except to receive the payment agreed, had no real interest in the defendant.
All the other stockholders and directors-, namely, Amos 'C. Towle, James F. Pitman and John C. Pit-man, and the plaintiff were present. The details of *144 the plaintiff’s claim and the proposed settlement were disclosed, and it was agreed among all the parties present that the plaintiff’s claim should be adjusted for $19,000.
(Shortly thereafter, on -September 21, the Treasurer of the defendant, Amos -C. Towle, acting on behalf of the corporation, sent the plaintiff the corporation’s note 'for $19,000, together with a check for $5,000.00' as partial payment on the note. The note is the note declared upon in (Count 1. The note and the credit was entered upon the books of the defendant in the ordinary normal course of business.
In March of 1945, John -C. Pitman, before the maturity date of the note, attempted to purchase it ■from the plaintiff in his own name at a discount.
At the time the note was given and coincidentally the $5,000.00 partial payment was made, the Auditor of the defendant drew a line with pencil through the figures1 $19,000.00 and wrote above in pencil the figure $14,000.00, and endorsed on the back of the note ‘‘Paid $5,000.00-' on account on the date of iSeptember 21, 1944”.
The only evidence in the case as to the by-laws of the defendant was the following:
‘Article U, ¡Sec. 2. The Directors- as a Board shall have and are hereby invested with all the powers- in the management of the company which the corporation itself possesses, not incompatible with the provisions of these by-laws and the laws of the Commonwealth. They may appoint and remove at pleasure such employees as they may see fit, shall have access to the books, vouchers and1 funds of the Treasurer, shall declare dividends as they may deem best, shall make for their own government such rules- and regulations not inconsistent with these by-laws- as they may see fit, and at every annual meeting of the stockholders shall, if requested by the stockholders, present a brief report of the financial condition of the company and of the -state of its property and assets. They shall fix -the salaries of officers.’
‘Article V, -Sec. 1. All deeds, bonds, contracts and agreements of this -corporation shall be signed -by the *145 President or Treasurer unless some other person is designated by the Board of Directors.’ ”
At the close of the trial, and before the final arguments, the defendant made the following Requests for Rulings: ■
“1. There is not sufficient evidence to warrant a finding that the execution and delivery of the note sued on ever was authorized or ratified by the defendant corporation. 2. There is not sufficient evidence to warrant a finding that the accounting declared upon ever was authorized or ratified by the defendant Corporation. 3. If, by the By-Laws of the defendant Corporation, its treasurer was given no authority to execute the note sued on, the plaintiff cannot recover. 4. If, by the By-laws of the defendant Corporation, no officer was given authority to enter into a compromise with the plaintiff, or to make an accounting with the defendant corporation as alleged, the plaintiff cannot recover. 5. There is no evidence sufficient to warrant a finding that the Board of Directors of defendant Corporation authorized its treasurer or any other officer to issue a note to the plaintiff, to compromise any claim with the plaintiff, or agree upon any accounting with the plaintiff, or make any accord and •satisfaction with the plaintiff. 6. There is not sufficient evidence to warrant a finding that the defendant Corporation received any consideration for the note sued upon or for the accounting declared upom 7. If, under the By-laws of the Corporation, a written contract was entered into between the plaintiff, and the defendant for the years 1940, 1941 for commissions to be paid to the plaintiff for sales of the defendant’s products to civilians; and if, during World War H, the United ¡States Government barred sales of the defendant’s products to civilians; and if, as a result thereof, the directors of the defendant Corporation authorized no further contract with the plaintiff for the duration of the war, then, as matter of law, the plaintiff is not entitled to recover. 8. Upon all the evidence the plaintiff has f ailed to establish that either the note declared upon or the accounting declared up *146 on is a legal and binding obligation upon the defendant .corporation, and the plaintiff is therefor not entitled to recover.”
The Court denied all of the above requests.
The defendant also filed a Motion to Dismiss, as follows:
“The defendant says that Count 1 of the plaintiff’s declaration declares upon a promissory note alleged to have been made by the defendant and payable to the plaintiff, the balance due on which amounts to Fourteen Thousand ($14,000) Dollars.
“That in Count 2 the plaintiff says that the defendants owes him Fourteen Thousand ($14,000.00 Dollars, on an ‘accounting together’.
“That thereafter the plaintiff states that ‘both counts are for the same cause of action’.
“Wherefore the defendant moves that the within action be dismissed.”
The Court denied this Motion.
The defendant, as plaintiff in set-off, filed the following Bequest for Buling:
‘‘Upon the evidence of the plaintiff in set-off, upon the records of the corporation and upon the admissions of the defendant in .set-off, the plaintiff in set-off is entitled to recover.”
The Court also denied this Bequest.
The Court found for the plaintiff in the sum of $14,408.00, and for the defendant in set-off.
After the finding, the plaintiff filed the following Motion:
“MOTION TO VACATE FINDING”
“Now comes the plaintiff in the above-entitled action and move's to vacate the finding in his favor of $14,408.33, and, for cause therefore, avers that the balance due upon the note in suit was $14,000.00'; that *147 'by amendment, if the plaintiff was entitled to recover, he was entitled to recover the balance of the principal, plus interest at 5% from September 21,1944 to March 27, 1946, which would be $1,061.66; that it is apparent that by inadvertence the amount of interest due to the date of the writ was computed at $408.33
“Wherefore the plaintiff moves that the finding entered be vacated, and that a finding be made for the plaintiff in the correct amount, namely, $15,061.66. ’ ’
The defendant then filed the following Bequests for Bulings:
‘ ‘DEFENDANT’S BEQUESTS FOB BULINGS ’ ’
“1. The ‘Motion to Vacate Finding’ must be disallowed as matter of law.
“2. The ‘Motion to Vacate Finding’ makes a request of the court beyond its legal or discretionary powers and must, as matter of law, be disallowed.”
The -Court, after hearing, allowed the" plaintiff’s Motion to Vacate Finding, denied defendant’s Bequests for Bulings, and made a finding for the plaintiff in the amount of $15,061.66.
The report states that it contains all the evidence material to the questions reported.
The purpose of this appeal, according to the defendant’s brief, is “to question the legality of the conduct of the trial after conclusion of the evidence,” or in other words, “to test whether or not the mandatory and technical rules of procedure established by our Supreme Court for the conduct of a trial have been fully complied with”.
These “technical rules of procedure,” contends the defendant, were violated in three respects:
“1. The Court failed, as required, to indicate the principles of law governing his general finding; 2. The *148 Court failed, as required, to compel the plaintiff to elect between the two inconsistent branches of law invoked by the two counts in the declaration; 3. The Court failed, as required, to rule that there was no consideration for the promissory note and that the plaintiff, as matter of law, could not recover.”
It therefore raises the following “specific questions of law”:
“1. May a Court, after specific requests for rulings, fail to indicate the principles of law upon which his general finding is based? 2. Is the mere word‘denied’ opposite all requests for rulings a compliance with the rules established by our Supreme Court? 3. May an action be maintained to conclusion, in which there are two counts, for the same cause of action, in which one count affirms and the other count disaffirms a contract or promissory note? 4. Was any consideration shown for the promissory note sued on? 5. If not, shouldn’t the finding have been for the defendant?”
In the case at bar, the trial judge denied all of the defendant’s requests, made no findings of facts and did not indicate by any memorandum the theory of law upon which he proceeded or on which of the two counts in the plaintiff’s declaration he made his finding. The trial judge, having failed to pass on the defendant’s requests for rulings, they are treated as having been denied. John Hetherington & Sons, Ltd. v. Firth, 210 Mass. 8, 18, 19; Hurley v. Boston Elevated Railway, 213 Mass. 192.
This method of dealing with requests has often been criticized. See John Hetherington & Sons, Ltd. v. William Firth Co., 210 Mass. 8, 17; Castano v. Leone, 278 Mass. 429; Mericantante v. B & M Railroad, 291 Mass. 261; Povey v. Colonial Beacon Oil Co., 294 Mass. 86, 93; Strong v. Haverhill Electric Co., 299 Mass. 455; and in certain cases, it has been a ground for reversal. John Hetherington & Sons, *149 Ltd. v. William Firth Co., 210 Mass. 8, 17; Bresnick v. Heath, 292 Mass. 293; Rummel v. Peters, 314 Mass. 504; Hoffman v. City of Chelsea, 315 Mass. 54.
But in the present case, we do not think this to be reversible error. By his allowance of the plaintiff’s motion to correct his original finding, it is plain that the judge made a finding on the count for the promissory note and not on that for the accounting. The defendant, not having argued nor mentioned in his brief his two requests relating to this motion, they are considered as waived. In any event, the Court had the power to correct a mistake. Hopkington v. B. F. Sturtevant Co., 285 Mass. 273, 275.
Since the trial judge’s finding was based on the count for the promissory notes, the second request dealing solely with the accounting became immaterial, and therefore, there was no prejudicial error in its denial.
The requests numbered 1, 3, 4, 5, 7 and 8 raised the question of authority in issuing the note. The evidence on that point was that at a conference between the members of the Board of Directors and the plaintiff, it was agreed to compromise the plaintiff’s claim for $19,000; that in accordance with that agreement, the note for that amount was executed by the defendant’s treasurer “acting on behalf of the corporation” and sent to the plaintiff with a check for $5,000. as “partial payment”, both the note and the credit being duly entered on the books of the corporation “in the ordinary normal course of business”.
The trial judge could also have found that the note was properly signed by the Treasurer who is authorized by Article V, Sec. 1 of defendant’s By-laws to sign “all deeds, bonds, contracts and agreements, unless some other person is designated by the Board of Directors”. There was, therefore, no prejudicial error in the denial of these requests.
*150 The sixth request raised the question of the consideration for the note. Assuming, without deciding, that lack of consideration for the note was properly raised by the defendant’s answer, we think the trial judge could not have allowed this request.
The production of the note was ‘ ‘ prima facie ’ ’ evidence that it was issued for a valuable consideration. G.L. (Ter. Ed.) Ch. 107, S. 47; Burnham v. Allen, 67 Mass. (1 Gray) 496. In Dean v. Carruth, 108 Mass. 242, at 244, the Court said, “In an action upon a promissory note, whether negotiable or not, the plaintiff sustains the burden of proof by producing the note and proving its execution. It is evidence, under the hand of the promisor, of a contract made upon a good consideration, even if the words ‘value received’ are omitted. Townsend v. Derby, 3 Met. 363.” Besides, there was ample evidence of consideration. The plaintiff claimed $41,616.40 for commissions due him. There was evidence that he was entitled to some commissions. This claim was compromised by agreement for the sum of $19,000., the amount of the note. A note given in settlement of a disputed claim is upon valid consideration. Bran-nan’s Negotiable Instruments Law Annotated (5th Ed.) Sec. 25, p. 324, and cases therein cited. The sixth request was therefore properly refused.
• The eighth request was for a finding of fact which the Court was not obliged to give. Davis v. Boston Elevated Railway, 235 Mass. 482; Whitkin, v. Markarian, 238 Mass. 334; Katzeff v. Goldman, 248 Mass. 365.
The general finding for the plaintiff, in the absence of findings of material facts, imports a finding of every material fact essential to support the conclusion reached. Adams v. Dick, 226 Mass. 46, 52; Jones v. Clark, 272 Mass. 146, 149; Kennedy Bros., Inc. v. Bird, 287 Mass. 477, 484; *151 Povey v. Colonial Beacon Oil Co., 294 Mass. 86, 90; Berry v. Kyes, 304 Mass. 56, 57.
Furthermore, the defendant’s requests could not properly be given unless a finding for the defendant was required as a matter of law. Milmore v. Landau, 307 Mass. 589, 590; Hoffman v. Chelsea, 315 Mass. 54.
There remains the third question raised by the defendant’s brief relating to the two counts in the declaration. Both counts were for the same cause of action. The trial judge evidently made his finding on one count, but no request was made at the close of the trial that the plaintiff be required to elect on which count he wished to proceed, and the evidence being sufficient to support the finding of the Court on the promissory note, judgment was properly entered on that count. West v. Platt,, 127 Mass. 367, 371; Brown v. Woodbury, 183 Mass. 279; Commercial Wharf Corporation v. City of Boston, 208 Mass. 482, 487; Katzeff v. Goldman, 248 Mass. 365.
There being no prejudicial error in the denial of the requested rulings, the report is to be dismissed.