until 9 a. m. on January 14th, suspended the defendant's right to demurrage during this interval. Gabler v. McChesney (Action No. 1) 60 App. Div. 583, 589, 70 N. Y. Supp. 191. Yet, unless the defendant is permitted to claim demurrage for this intervening period, its claim to $30 demurrage is untenable. It follows that the defendant had no lien for this sum, and its refusal to deliver the lumber, unless the whole of this sum was paid, constituted a conversion of the lumber, for which it must respond to the plaintiff in damages.

Judgment reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

THOMPSON v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department.   November 10, 1911.)

1. Usury (§ 2*)—Loan of Money—Foreign Contracts.

To secure a loan, an employé of a railroad company residing in New York signed a power of attorney authorizing his attorney in fact to make notes, assignments of wages, etc., to be exercised in the state of Maine. The attorney executed a note which was usurious, and sold it to a company in Maine, and the avails of the note were given to the employé. The note not being paid, the attorney in fact executed to the Maine company an assignment of wages to become due from the railroad company, and the next day a copy of the assignment was sent to the railroad company. The Maine company then assigned the claim to plaintiff, who sued the railroad company. In Maine any rate of interest agreed upon by the parties is valid. *Held*, that at common law the note, being wholly a Maine contract, would be enforced in New York, though usurious there.

[Ed. Note.—For other cases, see Usury, Dec. Dig. § 2.*]

2. Usury (§ 52*)—Assignment of Wages—Collateral Contract.

An assignment of wages, made for the purpose of securing the payment of a valid note, could not be vitiated on account of usury.

[Ed. Note.—For other cases, see Usury, Dec. Dig. § 52.*]

3. Assignments (§ 57*)—Wages—Notice.

Under section 42 of the personal property law (Consol. Laws 1909, c. 41), providing that any person who shall make to an employé a loan on account of future wages on an assignment or note covering such loan shall not collect or attach the same while in the possession or control of the employer, unless within three days after "the execution of such assignment or notes and the making of such loan or loans" a copy of "such agreement or assignment or notes under which the claim is made" is filed with the employer, the copy of an assignment of wages filed with a railroad company was in time, though the note was made more than three days before the filing of a copy of the assignment.

[Ed. Note.—For other cases, see Assignments, Dec. Dig. § 57.*]

4. Contracts (§ 2*)—Validity.

A contract, valid when and where it is made, is valid everywhere.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 2, 41, 145; Dec. Dig. § 2.*]

5. Courts (§ 90*)—Decision of Appellate Divisions.

The New York Appellate Division of the Second Department will not follow the decision of the Appellate Division of the First Depart-

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

' ment, 'where the weight of reason and authority is not such as to justify
the court in following such decision.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 90.*]

Appeal from Municipal Court, Borough of Brooklyn, Sixth District.

Action by Myrtle M. Thompson against the Erie Railroad Company. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

William C. Cannon (Lansing P. Reed, on the brief), for appellant.
Frederick H. Cunningham, for respondent.

WOODWARD, J. In the month of February, 1910, one John E. Doherty, an employé of the defendant, applied to the Chester Kirk Company, of New York City, for a loan of $37. Doherty was given a blank to be signed by him, which appears to have been a power of attorney, in and by which he constituted one Stella Blanding his true and lawful attorney to make notes, assignments of wages, and any instrument or instruments to repay the said loan, this power of attorney to be exercised in the state of Maine. On the 28th day of February, 1910, Stella Blanding, acting under this power of attorney within the state of Maine, made, executed, and delivered a promissory note for the sum of $45, due on the 4th day of April of that year. This note the said Stella Blanding sold to the N. W. Hasten Company, of Portland, Me., and Doherty was given $36.85 as the avails of such note. The note was not paid at maturity, whereupon the said Stella Blanding, still acting under the power of attorney, made an assignment of Doherty's wages to become due from the Erie Railroad Company to the N. W. Hasten Company in the sum of $90. This assignment was dated on the 21st day of April, and on the 22d day of April a copy of this assignment was sent to the Erie Railroad Company, together with a statement that if $60.50 were paid under the assignment promptly, and before the claim was placed in the hands of an attorney, the notice of assignment would be withdrawn, and no other notice or copy of any other instrument was sent to the defendant. Subsequently the N. W. Hasten Company assigned this claim to the plaintiff, who brought this action to recover the $60,-50, and she has a judgment for this amount against the Erie Railroad Company, which appeals from the judgment.

[1, 2] There can hardly be a doubt that at common law Doherty would have a complete right to give a power of attorney to a resident of the state of Maine to do any lawful act within that state. Doherty would himself have had a perfect right to go into the state of Maine and there enter into a contract for the loan of money at any rate of interest lawful in that state, and it appears to be conceded that there is no limit upon the rate of interest there, except that agreed upon between the parties. As collateral to such a contract, it can hardly

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be doubted that Doherty would have a perfect right to make an assignment of his wages, or of wages to be earned; and if he could do these things himself, if personally present within the state of Maine, we see no good reason why he could not empower his attorney in fact to do them for him, even though this should result in a contract which, if done and performed in the state of New York, would involve no obligation. Doherty did not make or authorize the making of any contract within the state of New York. He authorized a contract lawful in the state of Maine, and no rule of law suggests itself why a man within the state of New York may not authorize his agent to enter into a lawful contract in a sister state, even though such a contract would be opposed to the public policy of this state and would not be enforced here.

The contract authorized was lawful where made. No part of the contract was made here, or authorized to be made here, and in so far as the original note was concerned no one within the state of New York, other than Doherty, had any interest in the transaction. An action against Doherty on the note would not be open to the defense of usury, either in this state or in Maine; for it was not usurious where the contract was made, and the assignment of Doherty's wages, earned or to be earned, was made for the purpose of securing the payment of a valid legal obligation owing by Doherty. The original transaction, not being tainted with usury, could not operate to vitiate the collateral transaction, and so there was a valid and binding assignment of Doherty's wages, earned or to be earned from the Erie Railroad Company, and it is admitted that the defendant has paid to Doherty considerably more than the amount claimed since receiving notice of the assignment.

[3] The Municipal Court has held that the defendant is liable to the plaintiff in this action, and the appeal of the defendant brings up the question whether this otherwise lawful transaction has been outlawed by reason of the provisions of section 42 of the personal property law (Consol. Laws 1909, c. 41). This section provides as follows:

"1. Any person or persons, firm, corporation or company, who shall after March eighteenth, nineteen hundred and four, make to any employee an advance of money, or loan, on account of salary or wages due or to be earned in the future by such individual, upon an assignment or note covering such loans or advances, shall not acquire any right to collect or attach the same while in the possession or control of the employer, unless within a period of three days after the execution of such assignment or notes and the making of such loan of loans, the party making such loan and taking such assignment shall have filed with the employer or employers of the individual so assigning his present or prospective salary or wages, a duly authenticated copy of such agreement or assignment or notes under which the claim is made.

"2. No action shall be maintained in any of the courts of this state, brought by the holder of any such contract, assignment or notes, given by an employee for moneys loaned on account of salary or wages, in which it is sought to charge in any manner the employer or employers, unless it shall appear to the satisfaction of the court that a copy of such agreement, assignment or notes, together with a notice of lien, was duly filed with the employer or employers of the person making such agreement, assignment or notes, by the person or persons, corporation or company making said loan within three days after the said loan was made and the said agreement, assignment or notes were given."

[4] We believe that the obvious intention of this statute is to provide simply that the employer, when he is to be charged with an obligation to pay the contract debts of his employé, shall have a copy of the instrument by which this obligation is imposed upon him, and a notice of the lien, to the end that he may be fully protected in withholding the sum necessary to discharge the obligation, and it should not be presumed that the Legislature intended practically to outlaw a contract of a sister state, by imposing conditions upon the enforcement of such contract where no interest of the employé was involved. A contract, valid when and where it was made, is valid everywhere. (Osborn v. Nicholson, 13 Wall. 654, 656, 20 L. Ed. 689); and it certainly would not be contended that the state of New York intended to deny to its courts the power generally to enforce the obligations of contracts of a lawful character. The N. W. Hasten Company, or its assignee, would clearly have a right to come into this state and enforce the note given by Doherty in the state of Maine in an action upon the note. This would have no relation whatever to the Erie Railroad Company, and it would have no natural legal or equitable right to have notice.

Doherty had authorized his agent, not only to make a note payable in the state of Maine, but he had authorized this same agent, in the event of failure to pay this note, to make an assignment of his salary, earned or to be earned from the Erie Railroad Company, to meet the obligation. He had the same right to do this that he had to make the original contract, and this assignment became property in the hands of the N. W. Hasten Company, or its assigns, and it was only at this stage of the proceeding that the Erie Railroad Company had an interest in the matter. It was only then that it became entitled to notice of the transaction, for certainly the Erie Railroad Company is not the guardian of its employés, and it became interested and is entitled to notice only when its obligations are involved. When Doherty, through his agent, assigned his wages, earned or to be earned, to the N. W. Hasten Company in discharge of a legal obligation, that company took a property right in such wages; and the Erie Railroad Company, upon notice, owed the duty of retaining the amount due from time to time, for the payment of this claim.

The statute merely provides that this notice shall be of a given kind to make the obligation complete; but this is a regulation of the remedy, not a denial of the right, and if the statute is to be construed to require a notice of every step in the transaction before the defendant has any possible interest in the matter, it is such a denial of the constitutional rights of the employés that it could not stand in any court where the question was properly raised. Here the defendant had the notice required by the statute of the assignment, with the notice of the lien; and, this being the only point at which the rights of the defendant were in any manner involved, it must be assumed that all of the purposes of the Legislature have been served. This is a reasonable provision. It provides for a formal notice, where at common law an informal notice would do.

[5] It is true that the learned Appellate Division in the First De-

partment, in the case of Thompson v. Gimbel Brothers, 129 N. Y. Supp. 1025, has held a contrary construction, two of the learned justices dissenting; but the duty of determining the question is devolved upon this court, in the case before it, and the weight of reason and authority, it seems to us, is not such as to justify us in following a decision involving so much of questionable validity. It seems clear to us that the learned court passing upon this question in the First Department has been led into false reasoning through an effort to avoid the payment of an excessive rate of interest by Doherty, but this question has no place in the case. It is not the province of the law to make it impossible for people to make foolish or improvident bargains. It may limit the extent to which it will permit its own citizens to be imposed upon in the matter of interest, perhaps; but if its citizens will, either by themselves or through their agents, go outside of the state and make bargains, it is not the duty of the courts to give forced construction to language for the purpose of relieving them, or those who stand in their places, from liability.

Doherty's contract, made in the state of Maine, to be performed there, was a Maine contract, and if it was lawful there it was lawful in this state, and we ought not to put any impediments in the way of its enforcment which are not required by the orderly administration of the law, simply because the original contract, if made within this state, would have been void, because usurious. There was a valid assignment of Doherty's wages made within the state of Maine. The defendant had notice of that assignment, which was the only step in the entire transaction in which it had any right to enforce it, as much as though the original contract had related to the purchase of potatoes.

The judgment of the Municipal Court should be affirmed, with costs. All concur.