## CHATON FIBRE COMPANY *vs.* WILLIAM E. EATON.

Suffolk. January 22, 1926. — February 26, 1926.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Contract*, Construction. *Evidence*, Extrinsic affecting writing. *Words*, "My interest."

One, who was a stockholder in a corporation and who had made inventions for which, at the corporation's expense, he had applied for patents and as to some of which he had received letters patent, made an agreement with the corporation providing that, when the patents were secured, the corporation should have exclusive right to manufacture the patented articles, and, in case of severance of the relations of the parties, for the payment of a certain royalty. Desiring to sever his connection with the corporation, he made with it, after negotiations, an agreement in writing to sell to it his "interest in the" corporation. *Held*, that

(1) The words, "interest in the" corporation, were ambiguous;

(2) In a suit by the corporation against the inventor, evidence was admissible to show that the intention of the parties was to include in the words, "interest in the" corporation, all the inventor's interests in the patents and in the applications for patents.

BILL IN EQUITY, filed in the Superior Court on October 20, 1924, for specific performance of a contract which included an agreement by the defendant "to transfer, assign, and set over to the plaintiff all patents and applications taken out while in the employ of the plaintiff and relating to the Chaton Dust Guard."

The suit was heard by *Morton*, J., a stenographer having been appointed, under Equity Rule 35 (1905), G. L. c. 221, § 85, to take the evidence. Material findings and rulings are described in the opinion. By order of the judge a final decree for the plaintiff was entered. The defendant alleged exceptions.

*J. G. Bryer*, for the defendant.

*F. W. Knowlton*, for the plaintiff.

PIERCE, J. This is a suit in equity in which the plaintiff alleges that the defendant, in February, 1923, at the organization of the corporation, became owner of two fifths of its common stock; that as a matter of patent office record he

was then the owner of a certain invention or improvement in dust guards, described in two applications filed in February, 1923, in the United States Patent Office; that these applications, some of which have been granted, were entered at the expense of the plaintiff but in the name of the defendant.

The bill further alleges that the defendant agreed in February, 1923, to issue to the plaintiff a license for the exclusive right to manufacture or have manufactured and to sell dust guards produced under the said patents; that the defendant gave the plaintiff an option to purchase all the defendant's stock at an agreed price, if at any time the defendant left the employ of the plaintiff; that the plaintiff gave the defendant certain agreements in reference to royalty payments if the defendant at any time "for any reason whatsoever . . . [left] the employ of the . . . plaintiff"; that on or about August 25, 1924, the plaintiff and defendant entered into a contract respecting the defendant's severance of his connection with the plaintiff; that it was agreed for a specified consideration that the defendant would sell his stock in the plaintiff corporation, give up his right under the February agreement for royalty, and convey any patents and applications for patents taken out by the plaintiff in the defendant's name to the plaintiff.

This agreement was reduced to writing in the following form, and signed by both parties.

"Chaton Fibre Company

Boston, Mass., Aug. 25, 1924.

Chaton Fibre Co.

Gentlemen: —

I will sell and transfer my interest in the Chaton Fibre Co. for the sum of one thousand ($1000.) dollars, subject to acceptance within a reasonable time.

William E. Eaton

Accepted.

Aug. 25, 1924

Chaton Fibre Co.

F. V. Chaney

　Treas."

The bill further charged that the defendant on August 25, 1924, conveyed his stock in the plaintiff corporation to the plaintiff and received the specified consideration of $1,000; that on August 29, 1924, the treasurer of the plaintiff corporation in the presence of the defendant and another witness "tore up the license agreement of February, 1923, when the defendant asserted his willingness to transfer and assign all patents and applications for patents pertaining to the so called Chaton Dust Guard . . . and recognized his obligation of August 25 to set them over to the plaintiff"; that "on October 1, 1924, the plaintiff corporation requested the defendant. to assign the patent rights and applications in accordance with the agreement of August 25, 1924"; that the defendant "refused to execute these papers and stated that he intended to retain any rights or interest that he had in the invention by letter dated October 2, 1924."

The fifth prayer of the bill asks that the defendant may be compelled by decree "specifically to perform the said agreement with the plaintiff and to transfer, assign, and set over to the plaintiff all patents and applications taken out while in the employ of the plaintiff and relating to the Chaton Dust Guard." The defendant by his answer denied that he ever agreed to convey anything more than his stock interest in the plaintiff in consideration of the payment of $1,000, alleged that he had done this, and denied that he had at any time asserted his willingness to transfer or assign his patents.

At the trial, subject to the defendant's exception, one Chaney, the treasurer of the plaintiff corporation, testified as follows to conversation which he had with the defendant: Eaton said he "desired to sell his interests of every name and nature in the Chaton Fibre Company to me . . . . When Mr. Eaton made me that proposition I asked him if he really meant it, if he really wanted to sell everything he had in the Chaton Fibre Company. He said that he did, that he had some other prospects in view in the way of business, and he wanted to get out of the whole thing and be through with it. I asked him what he would sell for. He said he would sell for $1,000. I asked him to put the proposition

in writing.   He returned to his desk in the other office and brought me a written proposition to sell all his interest —
. . . I asked Mr. Eaton if he included in this proposition the dust guard patents, and he said that he did, that he was selling every interest that he had in the Chaton Fibre Company, dust guards and all, for that sum of money.   I drew him a check for $1,000, and when I handed it to him I made the statement: 'You understand that there are patent papers, transfers, and so forth, to be made and do you agree to sign any and all papers that may be necessary for the transfer of patents, applications and so forth?' and he said that he would, and I then paid him the sum of $1,000."
The witness then identified the contract, a copy of which is above set forth, and the check.   Chaney further testified that he said to Eaton at the time, "We will agree to destroy the copies of the two agreements between us," and Eaton agreed to that; that the next day the following incident occurred: "I asked Mr. Eaton if he had his copy of the agreement, and he said he did not have, that it was in his box.   I said: 'Now, I understand before we destroy this agreement that you agree to execute all the papers that may be necessary covering transfers, patents, and so forth, and that you are selling all of your interest in the company, dust guards and everything else.'   He said 'I do.'   'Then,' I said, 'I will destroy this copy of the agreement.'   I did destroy the copy of the agreement, and Mr. Eaton agreed to bring his copy into the office the next day and destroy that."   The defendant admitted the destruction of Chaney's copy of the agreement on the date testified to, and also that he (Eaton) tore up his copy because he "did not consider it worth anything at that time."

The trial judge admitted the evidence excepted to on the theory that the words " 'my interest in the Chaton Fibre Company' in the contract in suit were ambiguous and open to extrinsic evidence" and found that the contract of August 25, 1924, conveyed the defendant's interest in the patents; and upon these findings he entered a final decree ordering the defendant to assign the patents, from which decree the defendant appealed to this court.

The single, narrow question presented is whether the word "interest" in the phrase "transfer my interest in the Chaton Fibre Co." appears on its face to be complete with a meaning peculiar to and characteristic of an ownership in capital stock as distinguished from an interest in the property of the corporation. *Copeland* v. *Eaton,* 209 Mass. 139, 143, 144. There are no express words in the contract itself which enable the reader or court to determine the intent of the parties to it without a knowledge of their relation and of the circumstances properly applicable to it. As used in the context the ruling, that the words "my interest in the Chaton Fibre Company" were ambiguous, was right, as was the further ruling that extrinsic evidence was admissible. *Smith* v. *Vose & Sons Piano Co.* 194 Mass. 193.    *Waldstein* v. *Dooskin,* 220 Mass. 232, 235.

*Decree affirmed with costs.*