KENNEDY BROS. INC. *vs.* ADRIEL U. BIRD & another.

Suffolk.     November 10, 1933. — September 12, 1934.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Contract,* Construction. *Evidence,* Relevancy, Extrinsic affecting writings. *Waiver. Practice, Civil,* Findings by judge. *Words,* "Dividends," "Plus accrued dividends."

The capital structure of a corporation, as shown in its agreement of association, consisted of common stock, holders of which had the substantial voting rights in the corporation, and of seven per cent cumulative preferred stock, on which dividends at that rate were payable on January 1, April 1, July 1, and October 1, and which was redeemable at a certain price per share "and accrued dividends." In the event of dissolution, liquidation or winding up of the corporation, the holders of the preferred stock were to be paid the amount thereof at par "plus all accumulated unpaid dividends and the accrued portion of the current . . . [quarterly] dividends and no more." One who held all the preferred and common stock made a contract in writing which provided for the immediate sale of the common stock, carrying with it the management of the corporation, and for the subsequent sale of the preferred stock on a December 31 at par "plus accrued dividends." Dividends were paid on the preferred stock up to and including October 1. On December 31, the

purchaser paid the seller the par value of the preferred stock and received a certificate therefor. In an action thereafter brought by the seller against the purchaser to recover the dividend accrued on the preferred stock to December 31, the substantial issue was the meaning of the words, "plus accrued dividends," in the contract of sale. A judge who heard the action found for the plaintiff. *Held,* that

(1) The words in question, as used in the contract, were of equivocal meaning, and therefore it was proper to admit evidence that, during the negotiations preceding the making of the contract, it was understood by both parties that the seller should receive seven per cent on his money "left in the business" until it was paid; and testimony by dealers in securities that the words in question, when used in specifying the price on a sale of preferred stock with a fixed dividend rate, had a definite meaning, namely, that the stipulated price per share of the stock should be increased by a sum equivalent to the dividend rate from the last dividend date before the date of the sale to the date of the sale;

(2) A finding by the trial judge, that the "words 'plus accrued dividends,' in a contract of purchase and sale of cumulative preferred stock at a designated price per share, interpreted in their normal and ordinary meaning and as commonly understood in business transactions, rather than in their technical sense with relation to the rights of a stockholder between himself and the corporation under the agreement of association, import that the purchase price shall include a sum equivalent to a *pro rata* share, computed at the dividend rate, of any unexpired dividend period," was warranted;

(3) The provision of the agreement of association of the corporation with respect to the rights of holders of preferred stock in the event of its dissolution, liquidation or winding up was inapplicable to affect such finding;

(4) The finding for the plaintiff must stand.

At the hearing of the action above described, it appeared that on December 31, when the preferred stock was transferred and paid for, nothing was said about the accrued dividend thereon. There was admitted in evidence a letter, dated January 4, from the plaintiff's attorney to the defendant's attorney, stating that the accrued dividend was not "called for" when the stock was transferred because it was "assumed that the dividend would be paid at the regular time," and requesting payment thereof. The trial judge found that the plaintiff had not waived his right to recover. *Held,* that

(1) The finding was warranted;

(2) There was no reversible error in the admission of the letter in evidence, because it was relevant on the issue of waiver and because it did not affect adversely the substantial rights of the defendant.

Discussion by Rugg, C.J., of the meaning of the word "dividends" as used in different contexts.

CONTRACT. Writ in the Municipal Court of the City of Boston dated April 15, 1932.

Upon removal to the Superior Court, the action was heard by *Macleod*, J., without a jury. Material evidence and findings by the judge are stated in the opinion. He found for the plaintiff in the sum of $3,561.25. The defendants alleged exceptions.

The letter referred to in the opinion on page 485 was from the plaintiff's attorney to the defendants' attorney, was dated January 4, 1932, and read as follows:

"Your letter of January 2 with dividend check for $14,000 on the Kennedy & Co., Inc. Preferred stock has been received. Please send me check to cover the dividend accrued to December 31, 1931 on the 2,000 shares of Preferred stock transferred on that date pursuant to the provisions of paragraph 17 of the contract of December 27, 1929. I did not call for the accrued dividend when the stock was delivered as I assumed that the dividend would be paid at the regular time."

*John Wentworth*, (*R. W. Barrett* with him,) for the defendants.

*W. F. Rideout*, (*J. A. Plummer* with him,) for the plaintiff.

RUGG, C.J. This is an action of contract to recover $3,500 and interest alleged to be due as accrued dividends upon two thousand shares of the preferred stock of Kennedy & Co., Inc., a corporation organized under the laws of this Commonwealth and hereafter called the corporation. That corporation was owned and managed by three brothers. It operated about sixty retail grocery stores, dealing in about six or seven articles, in and around Boston and extending from Manchester, New Hampshire, to Providence, Rhode Island, and Springfield in this Commonwealth. This business had been profitable over a period of years. Dividends of eight per cent had been regularly paid on its preferred stock and dividends varying from $5 to $10 a year per share on the common stock. Just before the execution of the contract out of which this controversy arises, the plaintiff was organized and the three brothers transferred to it their stock in the corporation. The contract between the parties was dated on December 27, 1929, consisted of thirty-two articles and two supplementary

agreements of the same date, together constituting a single transaction. These instruments covered in considerable detail the immediate sale of the common stock in the corporation by the plaintiff to the defendants and the ultimate sale of its preferred stock, the amounts to be paid and the terms of payment. The price of the transfer was figured as of December 31, 1929, and the actual transfer was made in February, 1930. The defendant Bird in October, 1929, made an offer to the three brothers who owned the stock in the corporation. They made a counter offer shortly afterwards. Considerable negotiation and numerous interviews took place between the parties, and several drafts of contracts were prepared before the terms of sale were settled. The provisions of the contract material to this action are these: The capital structure of the corporation, which theretofore consisted of five thousand shares, each of the par value of $100, of eight per cent cumulative preferred stock and thirty thousand shares of common stock of no par value, was to be changed so as to substitute for the existing preferred stock ten thousand shares, each of the par value of $100, of seven per cent cumulative preferred stock, fixed dividends at that rate to be paid on the first days of January, April, July and October in each year. This preferred stock was redeemable at $105 a "share and accrued dividends." In the event of dissolution, liquidation or winding up of the corporation, the holders of this preferred stock were to be paid the amount thereof at par "plus all accumulated unpaid dividends and the accrued portion of the current semi-annual [quarterly] dividends and no more." This preferred stock was not to be transferred to the defendants as buyers and then retransferred to the plaintiff but was retained by the plaintiff. Owners of the preferred stock had no voting rights here relevant. Holders of common stock had the voting rights. The common stock was to be transferred at once to the defendants and therefore the management of the corporation would pass to them. The defendants later were to purchase the preferred stock in amounts, at intervals and upon conditions specified. These were in brief that the defend-

ants, beginning with 1931 and continuing to and including 1935, were to buy on or before December 31 in each year $200,000 of the par value at $100 "per share plus accrued dividends." Dividends were paid regularly upon the preferred stock up to and including October 1, 1931. On December 31, 1931, the defendants paid to the plaintiff $200,000, being the first payment for two thousand shares of cumulative seven per cent preferred stock of the corporation. Certificate transferring that number of shares was handed to the representative of the defendants. At the interview when this transaction took place, nothing was said by the respective representatives of the plaintiff or of the defendants touching the dividend due the next day on these shares. On January 2, 1932, check was sent to the plaintiff in payment of the dividend due the day before on eight thousand shares of preferred stock. Immediately the plaintiff made demand for the accrued dividend due on the two thousand shares delivered to the defendants on December 31, 1931. Payment was refused.

At the trial before a judge sitting without a jury evidence was received subject to the exception of the defendants of conversations during the negotiations preceding the execution of the contract to the effect that the representative of the defendants was told that the stockholders of the plaintiff would not leave its money in the business permanently with the common stock and management in the control of the defendants, but wanted the money as soon as practicable and wanted seven per cent interest on it until paid, and that both sides understood that the plaintiff was to receive seven per cent on the money left in the business until it was paid. Subject to like exception, evidence was introduced from dealers in securities that the words "plus accrued dividends," when used in naming the price on a sale of preferred stock with a fixed dividend rate, have a definite meaning; that they signify that the stipulated price per share of the stock is to be increased by a sum equivalent to the dividend rate from the date of the last dividend date to the date when the sale takes place; that this interest is figured in the same way as in the sale of

bonds; and that this interest rate applies to contracts to sell unlisted securities "plus accrued dividends" and that such a contract imposes on the buyer the obligation to pay such dividend rate to the time of sale in addition to the price specified.

The defendants filed numerous requests for rulings of law, all of which were denied. The trial judge made a general finding in favor of the plaintiff for the amount claimed. He found that there was no waiver by the plaintiff of any of its rights to recover. He found further: "1. The words 'plus accrued dividends,' in a contract of purchase and sale of cumulative preferred stock at a designated price per share, interpreted in their normal and ordinary meaning and as commonly understood in business transactions, rather than in their technical sense with relation to the rights of a stockholder between himself and the corporation under the agreement of association, import that the purchase price shall include a sum equivalent to a *pro rata* share, computed at the dividend rate, of any unexpired dividend period. 2. From the antecedent negotiations, the tenor of the whole instrument and the underlying business arrangement sought to be accomplished it is clear that all parties understood the term accrued dividends in the sense indicated above and contracted on that basis."

The chief controversy centers about the meaning to be given the words "plus accrued dividends" in the clause of the contract fixing the price to be paid by the defendants for the seven per cent cumulative preferred stock of the corporation at $100 "per share plus accrued dividends." The parties are in sharp conflict as to the purport of those words in their context. Many words have different meanings dependent upon the connection in which they occur and the result intended to be accomplished by their use. Generally the interpretation of written contracts presents a question of law. The provisions of contracts reduced to writing cannot be enlarged, abridged or varied by parol evidence. The trade as finally struck by the parties and embodied in a written instrument cannot be modified or changed in any such way. *Butterick Publishing Co. v.*

*Fisher,* 203 Mass. 122. *Goldenberg* v. *Taglino,* 218 Mass. 357, 359. *Mechaber* v. *Pittle,* 270 Mass. 193. *Warren* v. *Stoneman,* 276 Mass. 259. But for the "purpose of applying the terms of the written contract to the subject matter, and removing or explaining any uncertainty or ambiguity which arises from such application, parol testimony is admissible, and has a legitimate office." *Stoops* v. *Smith,* 100 Mass. 63, 66. The meaning of equivocal phrases or words may be made certain by showing that a particular significance has become attached to them by reputation, usage of trade, or otherwise. To the same end, the material circumstances attendant upon those executing the contract and the main purpose intended to be accomplished may be proved. Previous negotiations may clarify the sense in which expressions were understood by the parties. A contract is to be construed as a business transaction entered into by practical men to accomplish an honest purpose in accord with common sense. *Swett* v. *Shumway,* 102 Mass. 365. *Whitney* v. *Boardman,* 118 Mass. 242. *Lynn Safe Deposit & Trust Co.* v. *Andrews,* 180 Mass. 527, 533. *Buffington* v. *McNally,* 192 Mass. 198, 202. *Sleeper* v. *Nicholson,* 201 Mass. 110. *Martin* v. *Jablonski,* 253 Mass. 451, 456. *Chaton Fibre Co.* v. *Eaton,* 255 Mass. 136, 139, 140. *Clark* v. *State Street Trust Co.* 270 Mass. 140, 152, 153, and cases there collected. *Langevin* v. *Fletcher,* 273 Mass. 543, 545.

There was no error in the admission of evidence to which exception was taken. The case at bar falls within the principle declared in the group of decisions last cited.

Several cases have arisen touching the meaning of accumulated or accrued dividends or similar expressions used in articles of association or other instruments designed to fix the rights of stockholders as against the corporation. *Boston Safe Deposit & Trust Co.* v. *Adams,* 219 Mass. 175. *Thomas* v. *Laconia Car Co.* 251 Mass. 529. *Willson* v. *Laconia Car Co.* 275 Mass. 435. *Penington* v. *Commonwealth Hotel Construction Corp.* 17 Del. Ch. 394. Those decisions are not controlling in the case at bar. They relate to rights arising under corporate organizations and

not to contracts between buyer and seller as to the purchase of shares of stock. Transactions of the latter kind are governed by trade customs and the practices of the market place so far as they illuminate uncertain words. Those decisions show that the phrase "accrued dividends" is different in meaning from "unpaid dividends." The word "dividends" in many connections describes an act of the corporation through its authorized representatives in voting to declare a share of its net earnings to its stockholders. *Anderson* v. *Bean*, 272 Mass. 432, 444. Those decisions show also that the word "dividends" may have a meaning different from that. The words "accrued dividends" in combination without the addition of the word "unpaid" are apt to designate a net corporate profit not yet declared and not to be calculated solely with reference to dividend dates.

The general finding of the trial judge in favor of the plaintiff imports the finding of subsidiary facts and the drawing of all rational inferences essential to that conclusion. That finding must stand if permissible upon any reasonable view of the evidence. *Adams* v. *Dick*, 226 Mass. 46, 52. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143. *Jones* v. *Clark*, 272 Mass. 146, 149. The finding as to the meaning of the words "plus accrued dividends" in the contract was amply warranted by the evidence. The further finding, if material, that the parties understood those words of the contract as having that meaning, also is supported by evidence. Upon the facts found the construction given the contract by the trial judge was right.

The force of these findings is not overcome or met by the provision in the articles of amendment of the agreement of association of the corporation to the effect that in the event of dissolution, liquidation or winding up holders of preferred stock shall be paid the par value thereof "plus all accumulated unpaid dividends and the accrued portion of the current quarterly dividend and no more." That provision was not in the contract between the plaintiff and the defendants. It was a part of the amended articles of association which constituted the underlying framework of the corporation.

There was no error in the finding that there had been no waiver by the plaintiff of its rights to enforce the contract. Whether there has been a waiver is usually a question of fact. *St. John Brothers Co.* v. *Falkson,* 237 Mass. 399, 402. The failure by the plaintiff to demand the accrued dividend on December 31, 1931, when the money was paid for the stock and the certificate delivered, was not a waiver. In any event the dividend was not payable until a later day. There was no reversible error in the admission of the letter of the attorney for the plaintiff respecting this payment. It bore on the question of waiver. It did not affect adversely the substantial rights of the defendants.

These considerations are decisive against the contentions of the defendants. It is not necessary to examine the requests for rulings one by one. There was no error of law in their denial. They either were not relevant to the facts as found or were unsound in law. All the points urged in the elaborate argument presented in behalf of the defendants have been considered but they need not be discussed in further detail.

*Exceptions overruled.*