Elaine A. NEVINS, Co-Executor and Delores POKALSKI[1]
vs.
Alfred B. TINKER, JR.

District Court Department
Appellate Division, Southern District
Trial Court of the
Commonwealth of Massachusetts

November 18, 1980

---

[1]This is the name of this co-executrix as it appears in the docket entries. In some court papers including the report, her name appears as Dolores Pohalski. In other court papers it is given as Delores Pohalski.

Jack J. Furman for the plaintiff.
Richard L. Curley for the defendant.

Present: Lee, P.J., Rider, J. and Tamkin, J.[2]

RIDER, J. This is an action of contract in which the plaintiffs, as they are co-executors of the Estate of Luella B. Carlson, seek to recover from the defendant the sum of $20,000. together with interest alleged to be due to the estate on two promissory notes executed and delivered by the defendant to the testatrix. The complaint alleges that the first note in the sum of $10,000. was executed and delivered on or about January 10, 1973, and the second note in a like sum of $10,000. was executed and delivered on or about November 5, 1973.

The answer alleges that the note dated January 10, 1973 is usurious on its face in that it demands interest at the rate of eight (8%) per cent per annum whereas the legal rate of interest in the State of New York at that time was seven and one-half (7½%) per cent per annum; and, that the note of November 5, 1973 was partially forgiven by the provisions of the Fourth Paragraph of the Will of Luella B. Carlson, the payee. The defendant also alleges that this action was premature because of litigation in the New York courts to determine the indebtedness due on said notes.

The Court found for the plaintiffs in the sum of $16,000., with interest at the rate of eight (8%) per cent per annum from March 1, 1975, and with costs.

At the trial there was evidence tending to show:

The testatrix was the aunt of the defendant who owns or has an interest in a restaurant on Cape Cod. The aunt loaned $10,000. to the defendant in December, 1972 and an additional $10,000. in October or November of 1973. At first, these loans were not evidenced by any writing. There was an oral understanding, however, between the testatrix and the defendant that he was to

---

[2]Judge Tamkin resigned from the Appellate Division, Southern District on February 1, 1979.

pay interest on these obligations at the rate of eight (8%) per cent per annum and would repay the principal upon demand. There was conflicting testimony as to whether the loan, subsequently evidenced by the demand note dated January 10, 1973, was consummated in Massachusetts or in the State of New York; the defendant testified that both money payments were made at his aunt's home in Northport, New York.

Sometime after the moneys were advanced, the testatrix and the defendant met at her home on Long Island, New York and, at her request, he signed two promissory notes, each in the principal amount of $10,000. dated January 10, 1973 and November 5, 1973, respectively, payable on demand at Northport, New York, with interest at the rate of eight (8%) per cent per annum. No new consideration was given by the testatrix for these notes. Interest was paid until on or about the decease of the testatrix. It is not disputed that no payments have been made on account of principal and that the notes were drawn by the payee.

The New York attorney for the plaintiffs, one William Klan, testified that during the period of February 16, 1969 to August 15, 1973, the maximum rate of interest of the Banking Board of the State of New York was seven and one-half (7½%) per cent per annum as promulgated by the General Obligations Law of the State of New York, Sections 5.501 and 5.511. When the second $10,000. was advanced, the New York State Usury Statute applicable to this type of loan had been amended from seven and one-half (7½%) per cent to eight (8%) per cent interest.

The testatrix was an unmarried legal secretary employed in New York. Her will, which was probated on June 3, 1975, was admitted into evidence. She established a legacy of $20,000. to care for her animals. Thereafter, she gave legacies to her sister ($5,000) and to her nieces and nephews, including the defendant, $1,000. each. There were a number of $500. legacies to persons who were not relatives. The fourth clause of the will, which is in issue, is quoted in defendant's request for ruling No. 8. The residuary beneficiaries were various charities. There is a clause providing that any beneficiary or next-of-kin who contests the will shall be deemed to have predeceased her, and such legacy or share would become part of her residuary estate.

The defendant testified that he had at least two conversations with the testatrix, one at her home and one while she was in the hospital near or during her last illness wherein she stated to the effect "don't worry about the money, Alfred, I've taken care of that in my will." There was also testimony that an action is pending in the Surrogates Court of New York for a determination of the language used in the Fourth Clause of the testatrix' will as well as an action to declare null and void the note dated January 10, 1973, bearing interest at the rate of eight (8%) per cent per annum, on the grounds that said note is usurious on its face.

The defendant's requests for rulings, seasonably filed, and the rulings of the trial judge thereon are as follows:

"1. The demand note claimed on date January 10, 1973, in the amount of Ten Thousand (10,000) Dollars at eight (8%) per cent interest executed by the defendant, Alfred B. Tinker, Jr. and delivered to Luella B. Carlson, is void under applicable Law(s) of the State of New York, see **N.Y. General Obligations Law Section 5.501, 5.511.**

**Denied.** I find as a fact that the loan was entirely consummated in Massachusetts sometime before the note was executed and delivered and I further find that neither of the parties intended to consummate a usurious transaction.

2. The law of the State of New York applied to the enforceability of the demand note dated January 10, 1973, in the amount of Ten Thousand (10,000) Dollars, at eight (8%) per cent interest, executed by the defendant, Alfred B. Tinker, Jr., and delivered to Luella B. Carlson, see **First National Bank of Boston v. Fairhaven Amusement Co. 1972 NE. 607; Clark v. State Street Trust Co. 169 NE 877.**

**Denied.** The 'enforceability' or the remedy is determined by the **Lex fori.**

3. The demand note dated January 10, 1973, in the amount of Ten Thou-

sand (10,000) Dollars, at eight (8%) per cent interest is as a matter of law null and void under the provisions of the General Obligations Law State of New York, Section 5.501 and 5.511.

**Denied.** I find as a fact that the loan was entirely consummated in Massachusetts sometime before the note was executed and delivered and I further find that neither of the parties intended to consummate a usurious transaction.

4. The maximum interest rate under the rules of the Banking Board of the State of New York for the period February 16, 1969 and before August 15, 1973, was seven and one-half (7½%) per cent per annum, see N.Y. General Obligations Law Section 5.501 and Footnotes thereto 'maximum interest rate for the period 2/16/69 to 8/14/73 is 7.50 per cent per annum', also testimony of its witness attorney William Klan.

**Allowed.**

5. The demand note dated January 10, 1973, in the amount of Ten Thousand (10,000) Dollars, at eight (8%) per cent interest, executed by the defendant, Alfred B. Tinker, Jr., and delivered to Luella B. Carlson, was executed and delivered in New York and therefore its legality is to be determined under the provisions of the State of New York. (Cases cited in Request #2).

**Denied.** I find as a fact that the loan was entirely consummated in Massachusetts sometime before the note was executed and delivered and I further find that neither of the parties intended to consummate a usurious transaction.

6. The action to enforce the demand note of January 10, 1973, in the amount of Ten Thousand (10,000) Dollars, at eight (8%) per cent interest executed by the defendant, Alfred B. Tinker, Jr., and delivered to Luella B. Carlson, is premature in that there is presently pending in the Supreme Court of the State of New York, Suffolk County, an action to declare the said note void because of failure to comply with applicable State Law. (Testimony of the plaintiff, Elaine Nevins and Counsel, William Klan).

**Denied.**

7. The note dated November 5, 1973, is forgiven under the provisions of the Will of Luella B. Carlson. (copy annexed and testified to by plaintiff Nevins).

**Denied.** See Special finding of fact and rulings by Court.

8. The note dated November 5, 1973, in the sum of Ten Thousand (10,000) Dollars, at eight (8%) per cent interest on demand, is forgiven by the terms of the payee's will which reads as follows:

'FOURTH: If, at the time of my death, my nephew, ALFRED B. TINKER, JR., still retains a balance on my original investment in his restaurant known as The Blacksmith Shop, Truro, Massachusetts, I direct that one-third of such balance or the sum of FOUR THOUSAND ($4,000.00) DOLLARS be cancelled and credited to the investment of said ALFRED B. TINKER, JR.; one-third of such balance or the sum of FOUR THOUSAND ($4,000.00) DOLLARS whichever is less, be cancelled and credited to the investment of my nephew, MARTIN P. TINKER: and one-third of such balance or the sum of FOUR THOU-SAND ($4,000.00) DOLLARS, whichever is less, be cancelled and credited to the investment of my nephew, WILLIAM M. TINKER. In the event that after these transactions have been completed, there should remain any balance on my said investment, then ALFRED B. TINKER, JR., shall have one (1) year in which to pay the said balance to my estate, together with interest at the rate of eight (8) per cent per annum to the date of payment. Upon payment in full, my Executors are directed to cancel and return to my said nephew all evidences of such investment and indebtedness.' (copy annexed)

**Denied.** See Special finding of fact and rulings by Court.

9. The obligation(s) of the defendant, ALFRED B. TINKER, JR., if any

under the provisions of the note dated November 5, 1973, should be determined by the Surrogates Court of Suffolk County, New York. (Probate pending in N.Y. — testimony of co-executrix, Elaine Nevins)

Denied.

10. The proper jurisdiction for a determination of obligations of the parties under the two notes declared on in this action is/are the Courts of the State of New York.

Denied."

The Court made the following findings:

"This is an action of contract in which the testatrix of the plaintiffs was the holder of two demand promissory notes executed and delivered by the defendant.

The answer alleges that the notes in question were usurious by the laws of the State of New York; that there was a total or partial forgiveness of the indebtedness in the will of the Testatrix, which was admitted ro probate in New York; that the action here is premature because of litigation in the New York Courts to determine the indebtedness due on said notes; and that defendant has been unnecessarily harrassed and ought to be reimbursed his expenses.

The answer does not question the authority of the New York executresses to prosecute this action in the Courts of Massachusetts. Therefore, the question of standing is deemed waived.

The facts relevant are as follows:

The testatrix was the aunt of the defendant, who owns or has an interest in a restaurant business on the Cape. The aunt loaned $10,000.00 to the defendant in December of 1972 and an additional $10,000.00 sometime later. At first, these loans were not evidenced by any writing. There was an oral understanding, however, between the testatrix and the defendant that he was to pay interest on these obligations at the rate of 8% per annum and would repay the principal upon demand. Although the defendant testified that both money payments were made at his aunt's home in Northport, New York, I find that said loans were consummated and the moneys were paid over to the defendant here in Massachusetts. Sometime afterwards, the testatrix and the defendant met at her home on Long Island, New York and, at her request, he signed two promissory notes, aggregating $20,000.00 and, payable on demand, at Northport, New York, at 8% per annum. No new consideration was given by the testatrix for these notes. Interest was paid until the decease of the testatrix. It is not disputed that no payments have been made on account of principal. It is also undisputed that the notes were drawn by the payee.

The will of the testatrix was admitted into evidence. The testatrix was an unmarried legal secretary employed in New York. She established a legacy of $20,000.00 to care for her animals. Thereafter, she gave legacies to her sister ($5,000.00) and to her nieces and nephews, including the defendant, $1,000.00 each. Then there were a number of $500.00 legacies to persons who were not relatives.

The fourth clause of the will promised that if at the time of her death the defendant 'still retains a balance on my original investment' in his restaurant on the Cape, one third of such balance or $4,000.00 was to be cancelled and 'credited to the investment of' the defendant; one third of the balance or $4,000.00 whichever is less, was to be cancelled and credited to the investment of another nephew; and one third or $4,000.00, whichever is less, was to be cancelled and credited to the investment of another named nephew. It is further provided that in the event that after these transactions there should remains any balance on her investment, the defendant shall have one year to pay the balance to her estate at 8% per annum interest to the date of payment.

The residuary beneficiaries were various charities. There is a clause providing that any beneficiary or next-of-kin who contests the will shall be deemed to have predeceased her, and such legacy or share would become part of her residuary estate.

The will was probated June 3, 1975.

Since this court has jurisdiction of the action to recover on the notes and since the defense of a total or partial forgiveness is in issue, I rule that this court has authority to construe the language of the will as it pertains to foregiveness of indebtedness.

I construe and apply the language in question as follows:

1. The defendant is entitled to credit of $4,000.00 on the sum then owed on principal.

2. Upon payment of $8,000.00 to the plaintiffs herein for the use of Martin and William Tinker (the two other nephews named in clause four), the defendant is entitled to have one year from the date of such payments to pay the remaining principal sum of $8,000.00 at 8% per annum.

3. If the defendant does not elect to avail himself of the one year's forebearance by paying $8,000.00 for the use of the other two nephews, the entire balance, less the $4,000.00 partial forgiveness shall be due immediately with interest.

I rule that the notes in question are not usurious even though executed in New York, for the reason that the loan transactions upon which the notes were based were entirely completed here in Massachusetts. See Seeman v. Philadelphia Waterhouse Co., 274 U.S. 403 (1927); Thompson v. Erie R. Co., 147 App. Div. 8, 131 NY.S. 627 (1911). This was not the case of a New York contract wherein the parties made it appear to be a Massachusetts Contract as a subterfuge to avoid the New York Usury Laws. Compare: London Finance Co. v. Shattuck, 221 N.Y. 702 117 N.E. 1075 (1917).

I find that neither the borrower nor the lender intended to consummate a usurious loan transaction. See Hopkins v. Flowers (sic), 256 Mass. 367, 370 (1926).

I find for the plaintiffs in the sum of $16,000.00 with interest at the rate of 8% per annum from March 1, 1975 and with costs."

The report states that it contains all the evidence material to the questions reported.

The defendant claims to be aggrieved by the Court's rulings on Defendant's Requests for Rulings of Law, Nos. 1, 2, 3, 5, 6, 7, 8, 9 and 10 and the Finding for the Plaintiffs in the sum of $16,000.00 together with interest and costs.

There was no prejudicial error.

### I.

We consider first the issue raised by defendant's request for ruling No. 6. Since we deemed it inappropriate that the issues raised in this case should be under consideration simultaneously by a Massachusetts trial court and a court or courts of the State of New York, we issued an Order For Amplification of Report ordering that the trial judge "include in the report the decisions of the Surrogates Court of New York and the Supreme Court of the State of New York, Suffolk County, and any appeals thereof, with respect to all matters involved in the will and notes of the late Luella B. Carlson." This order was issued on July 5, 1978.

Under date of August 28, 1978, the trial judge filed an Amplified Report. Attached thereto was a copy of an Order entered on June 20, 1977 in the Supreme Court of the State of New York for Suffolk County in the case of Alfred B. Tinker, Jr. vs. Elaine A. Nevins and Delores Pohalski, as Co-Executors of the Estate of Luella B. Carlson, No. 77-8540. The Order reads as follows:

"Ordered that this motion and cross-motion are denied. There are fact issues concerning the time, place and circumstances which underlie this litigation. Therefore, summary disposition is not warranted."

The Amplified Report, which was signed and certified by the trial judge continued: "To the best of my knowledge and belief this is the only decision with respect to the matters involved in the will and notes of the late Luella B. Carlson."

From other certified copies of records obtained from the New York Supreme Court we learn that this action was instituted on March 16, 1977 by a Motion for Sum-

mary Judgment In Lieu of Complaint. In his Motion the plaintiff, a resident of the "town of Truro, County of Barnstable, State of Massachusetts," alleged under oath that "(T)his action is brought to declare null and void the promissory note in the face amount of $10,000.00 dated January 10th, 1973, bearing interest at the rate of 8% per annum, on the grounds that said note is usurious on its face and is as a matter of law null and void under the provisions of the General Obligations of the State of New York, Section 5-501 and 5-511."

In opposition to plaintiff's motion, defendants filed a cross-motion "for an order pursuant to CPLR 3211 (a) dismissing the motion for summary judgment on the grounds that (a) this Court has no jurisdiction of the subject matter of the cause of action; (b) there is an action pending in the Commonwealth of Massachusetts concerning the same parties and same cause of action for which relief is sought in this Court...." The defendant, Elaine A. Nevins, filed an Affidavit In Opposition To Motion For Summary Judgment And In Support of Cross-Motion. William F.X. Klan, attorney for the defendants, filed an Attorney's Affirmation In Support of Opposition To Plaintiff's Motion And In Support Of Defendants' Cross-Motion. Lawrence W. Krieger, attorney for the plaintiff, filed an Affidavit in Opposition to Defendants' Cross-Motion and in Support of Plaintiff's Motion. From the records of the New York Supreme Court it appears that there has been no further action in this matter since the Order of the Court was entered.

We have also been provided with a Certificate of Search, issued under the seal of the Surrogate's Court for Suffolk County by its Chief Clerk, dated September 27, 1979, which reads:

"It is hereby certified that search of the records of the Surrogate's Court for Suffolk County has been made for Luella B. Carlson and such records indicate as follows: No record of Power of Attorney, Assignments, encumbrances or any pending proceedings filed with the Surrogate's Court of Suffolk County by or against Alfred B. Tinker, Jr."

Based on the foregoing, we hold that the trial judge properly denied defendant's request for ruling No. 6.

## II.

There was no error in the denial of defendant's requests for rulings Nos. 9 and 10. The trial court had jurisdiction of the subject matter (G.L. c. 218, secs. 4 and 9). **Police Commissioner of Boston vs. Municipal Court of the Dorchester District,** 374 Mass. 640, 666 (1978). As early as 1860 the United States Supreme Court pointed out that jurisdiction over the cause includes the right and power to decide all questions and issues necessary to the resolution of the dispute. **Freeman v. Howe,** 65 U.S. 450, 457 (1860). The defendant owns or has an interest in a restaurant on Cape Cod, thereby conferring personal jurisdiction of the defendant upon the trial court. G.L. c. 223A, sec. 3 (inserted by St. 1968, c. 760).[3] The trial court thus had jurisdiction to determine the obligations of the parties under the promissory notes in question. As the court pointed out in **Good Hope Industries, Inc. v. Ryder Scott Co.,** ___ Mass. ___ (1979)[a], quoting from **Gardner Eng'r Corp. v. Page Eng'r Corp.,** 484 F. 2d 27, 31 (8th Cir. 1973): "(I)t is immaterial that the contract in question may have had significant connections with states other than the forum state. Plaintiff is not required to choose the forum with the most significant contacts as a matter of jurisdiction...."

It should be noted that this action was instituted in the District Court on June 24, 1976, whereas the action in the New York Supreme Court was begun on June 13, 1977. Under these circumstances, the District Court correctly retained jurisdiction and resolved the dispute. The "court in which the first action is commenced cannot

---

[3]G.L. c. 223A, sec. 3 provides that "(A) court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to any cause of action in law or equity arising from the person's
(a) transacting any business in this commonwealth;
(b) ...
(c) ...
(d) ...
(e) having an interest in, using or possessing real property in this commonwealth; ..."

be ousted of, nor will it yield, jurisdiction by reason of the subsequent commencement of another action between the same parties for the same cause of action in another state or country." 21 C.J.S. sec. 548 (1940). See, **Freeman v. Howe,** supra, at 457.

### III.

We come now to a determination of which State's law applies to the validity of the promissory note bearing the date of January 10, 1973. There is no dispute concerning the note dated November 5, 1973, which is valid both under the laws of the State of New York and those of Massachusetts.

Upon evidence of the law of New York which limited permissible interest at the date of the first note to seven and one-half per cent per annum, the trial judge allowed defendant's request for ruling No. 4 which is quoted earlier in this Opinion (supra, at page 5). We have before us New York General Obligations Law Section 5-511, which reads in part as follows:

"1. All bonds, bills, notes . . . whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum, or greater value, for the loan or forbearance of any money, goods or other things in action, . . . shall be void. . . ."

"2. . . . whenever it shall satisfactorily appear . . . by proof, that any bond, bill, note, . . . has been taken or received in violation of the foregoing provisions, the court shall declare the same to be void, and enjoin any prosecution thereon, and order the same to be surrendered and cancelled."

In contrast, the interest charged for the loan evidenced by the note dated January 10, 1973 was within the permissible limit established by G.L. c. 271, sec. 49, as amended by St. 1971, c. 368. Section 49(a) provides in pertinent part: "(W)hoever in exchange for either a loan of money or other property knowingly contracts for . . . interest and expenses the aggregate of which exceeds an amount greater than **twenty per centum per annum** . . . shall be guilty of criminal usury . . ." (Emphasis added).

The note in question reads as follows:

"January 10, 1973. ON DEMAND after date, for value received, I promise to pay to the order of Luella B. Carlson TEN THOUSAND ($10,000.00) Dollars at 10 Highwood Drive, Northport, New York, with interest at 8 per cent per annum, payable quarterly. This note is one of a series of 1 notes of even date herewith, aggregating $10,000.00. No. 1, Due on Demand. (SGD) Alfred B. Tinker, Jr. ALFRED B. TINKER, JR."

It is a negotiable instrument as defined in the Uniform Commercial Code, G.L. c. 106, sec. 3-104(1). Conflict of law problems arising under the Uniform Commercial Code are resolved by the Code. **Skinner v. Tober Foreign Motors, Inc.,** 345 Mass. 429, 432 (1963). **Industrial National Bank of Rhode Island v. Leo's used Car Exchange, Inc.,** 362 Mass. 797, 800 (1973). The pertinent rule is stated in G.L. c. 106, sec. 1-105.[4] Since the provisions of paragraph 2 of sec. 1-105 do not include Article 3, "Commercial Paper", paragraph 1 applies to this case. There is no evidence that the drawer and the drawee of the promissory notes agreed that the New York law should apply.

We hold that this transaction bears an "appropriate relation" to this state. The defendant owns or has an interest in a restaurant on Cape Cod. The loans were negotiated in Massachusetts and the interest rate was agreed upon after negotiation. The trial judge found that the loans were consummated and the moneys were paid over to the defendant in Massachusetts; also that neither the borrower nor the lender intended to consummate an usurious loan transaction. Interest was paid by the defendant on the loans until on or about the decease of the testatrix.

Findings of fact of the trial judge may not

---

[a]Mass. Adv. Sh. (1979) 1155, 1169.

[4]Section 1-105, inserted by St. 1957, c. 765, sec. 1, reads in part: "(1) Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this chapter applies to transactions bearing an appropriate relation to this state."

be disturbed on appeal if they are permissible upon any reasonable view of the evidence or unless plainly wrong. **Zaleski v. Zaleski**, 330 Mass. 132, 134 (1953). **Barttro v. Watertown Square Theatre, Inc.**, 309 Mass. 223, 224 (1941). **Kennedy Bros., Inc. v. Bird**, 287 Mass. 477, 484 (1934).

Furthermore, it does not appear that the defendant complained about the transactions prior to the institution of this action. The U.S. Supreme Court has held that where the parties acted in good faith, if the rate of interest is higher at the place of contract than at the place of performance, the parties may lawfully contract for the higher rate. **Seeman v. Philadelphia Warehouse Co.**, 274 U.S. 403, 408 (1927).

We, therefore, hold that the trial judge properly denied defendant's requests for rulings Nos. 1, 2, 3 and 5.

### IV.

There was no error in the denial of defendant's requests for rulings Nos. 7 and 8. Under whatever construction might have been placed on paragraph "Fourth" of the testatrix will, it does not appear that the note dated November 5, 1973 was forgiven. It is clear from the next-to-last sentence of paragraph "Fourth" that the testatrix contemplated that the bequests under this paragraph might not exhaust the balance of her investment in the defendant's restaurant. If this situation eventuated, the intent of the testatrix was that the defendant should have one year to pay the balance to her estate. Our duty is to ascertain the intention of the executrix. **Merrimack Valley National Bank v. Grant**, 353 Mass. 145, 148 (1967). We discern no intention on her part to forgive the note of November 5, 1973.

The report should be dismissed.

So ordered.
Edward A. Lee, P.J.
Daniel H. Rider, J.